The opinion of the. court was delivered by
Duncan, J.
One thing is very certain, that the widow holds every thing specifically bequeathed to her by the will of her husband, to the.smallest particle, and now enjoys all the privileges of the property devised to Isaac Cauffman, aqcordirig to the will of her husband; and it is equally certain that so holding her bequests, *22 if she succeeds in this action, she deféats the will and deprives the plaintiff in error of every thing.that his grandfather intended, and nothing is more certain than that by the express provision of the acts'of. the 4th of April, 1794, and 1st of April, 1811, these bequests are in bar of dower, leaving her her choice either to demand her dower, or take to the bequests, — her choice she has not testified in the manner prescribed by the act of 1811. That is to be on a citation issuing from the Orphans’ Court, calling on her to appear in the Orphans’ Court, either to elect such bequest or devise, or waive it and take to her dower: of which election a record is to be made, which shall be conclusive on all parties. This election is to be made by the widow personally, appearing in court. Of this personal appearance, and election a record is to be made.
The paper filed on the 10th of November, 1823, with the register was altogether extrajudicial, and was no more a compliance with the direction of the act, than if it had been filed with the cryer of the court. Not only is the fact as I have .stated it, but the forms used to enable her to take both the bequests, and' the dower in this infant’s house, however ingenious the expedient may have been, shows that she stuck to the will as to all the benefits to be derived-from it, though'she was desirous of avoiding the effect of such an act. The election of the demandant, filed in .the Register’s Office, is dated the 10th of November, 1823, and the agreement between the devisees and the principal legatees, as Cauffman, and the two sons-in-lawj Eberly and Rupp, are styled, and the release to .the executors or heirs was of the same date, witnessed by the same persons, the counsel of Isaac, and Eberly and Rupp.
These papers are .to be considered as the same transaction, done uno fi'aiu, and for the purpose clearly of the demandant’s taking under the will, without the legal'consequences flowing from such an act. The election in the paper filed in the Register’s Office, is an election to take according to.the intestate laws, and a refusal to take und'er. the will.. But,-take this in connexion with'the concomitant agreement, — stating that the consideration was an agreement to take from Isaac four hundred dollars, in addition to' the bequests under the will, and in addition to the privileges and specific legacies, — there is no ambiguity. ££’ Whereas it has been agreed between me and the principal devisees 'and legatees, that Isaac Cauffman pay me, in addition to the bequests under the will of the said Christian, the sum of four hundred dollars, in addition to the privileges and specific legacies.” And, in the releasing part,, it is a release of all the estate, ££ both real and personal, of the late Christiana Cauffman, and all dower, or right of dower, to any lands'or tenements of the said Christian Cauffman, and all suits for or on account of dower to the executors or heirs,— excepting and reserving to myself, my heirs, executors, and administrators, all privileges, legacies, and rights, under the will of my husband given to mej and also reserving'all my right of dower to *23 the real estate of the said Christian, situate in the borough of Car-lisle, the parts thus reserved to be and remain vested in me, the same as if this release had never been given or executed.”
'■Now nothing can be clearer than the'substance of this agreement. It was an agreement'that she should take all given to her,by the will, and, in addition, receive four hundred dollars. And, in.the very same words that ,she reserves her right to all the privileges, legacies, and rights under the will, she reserves her right to dower to the property in Carlisle. Then comes the salvo: — “And it is expressly understood, that I have refused to take under,the will of my late husband, Christian Cauffman, and that I elect to take according to the intestate laws of this, state, and that the foregoing release is a compromise with the legatees of Christian Cauffman, as far as affects Isaac Cauffman, George Rupp, and Benjamin Eberly, and that the reference to the will is only to designate the privileges, money, and other articles, I am to receive from those who by law are bound to pay the same.” We are not to b¿. governed by the sound of words, but by the substance. By the words, it was a compromise, an. agreement, that .she should have all given to her by the will, and a reservation of all her rights to the personalty given to her by. the will; and the salvo is to guard against the legal consequences arising from that agreement and reservation. And, in point of fact, she did take all under the will— all given to her by the will. She could not take it by agreement with Isaac Cauffman, and Rupp and Eberly — it was not theirs to give, as I shall presently show, if she had renounced it; for if she took to her dower, then she was bound to surrender up'to the disappointed devisee, John Cauffman, by way of compensation or satisfaction, every thing given to her by the will. It did not go to the residuary legatees, nor to Isaac Cauffman; and it will not escape observation, that, in the concluding lines of the salvo, in speaking of the privileges, money, and articles “I am to receive from those who by law are bound to pay the same,” all those acts • were done and the papers prepared, by her own counsel, and the counsel of Isaac Caiiffman, and Rupp and Eberly; arid, so far as respected themselves and their own interest, it was very well; but, so far as respected, the plaintiff in error, he Was no party to it; he was an infant; neither himself nor his guardian consented, and'it whs an agreement sacrificing his interest. The parties took care of themselves — their acts bound them — and of their acts he may take advantage, and of the legal results of their acts.
The receipts of Elizabeth Cauffman, the demandant, whatever may have been the real dates, to the executors for the specific articles, show that she received from the- executors, in their character of executors, and in pursuance of the will; and the receipt for the money legacies, explicitly and conclusively proves what the real transaction was:
“Received of Benjamin Eberly, one of the exeeutbrs of the *24 last will and testament of Christian Cauffman, one thousand two hundred dollars, in full, the sum bequeathed to me by my late husband, the said Christian Cauffman.”
These papers, the work of the parties to the original agreement, carefully read over to her when'she signed them, show what this transaction really was: that the demandant should take all under the will; but it was to be so conducted, that she should appear to acquit them under the will, but would take them by way of compromise from those who had no power to give them-in any other character than as executors. -
It may be said, that .these subsequent acts were acts of ignorant people, unacquainted with .legal forms. It may be so, or it may not be so; but it clearjy shows their understanding of the transaction, and they had sufficient knowledge of their own inténtions and views. It may be true enough that the counsel did not draw the receipt in this form:’ it may be true'enough they may have recommended a salvo to be adopted; but.these receipts incontestably and conclusively prove acceptance and election under the will, the real undisguised intention. The papers, taken together, prove the character in which she took the legacies — a legatee; and the character in which the persons stood who. were the executors, executing the last will and testament of the testator. .There.is nothing equivocal in.this., She could take them in no other character than that given to her by the will, the executors could give them in no other character, and I‘ think amount to conclusive evidence of election: they recite the character in which she claims them.. However it may be as to.others, as to John it was an acceptance and election. It matters not how they concocted the matter, the question is, did she take them under the will? — mo matter whether by compromise or otherwise.- The agreement,-was, that she should have them in addition. The reservation of them in the release was a reservation under the will:- — “reserving to me all the privileges, legacies, and rights under the will of my late husband given to me.” And the evidence is, that she constantly has possessed all these rights and privileges, in literal and exact conformity to her husband’s will, down to the very table made by Mr. Snively. How, then, can it be said that she renounced the bequest when she reserves these, when she constantly has enjoyed that? How could she be said tó renounce that which she in terms reserves?
The doctrine of election has long prevailed; it has,undergone many modifications. The- eases cannot all be reconciled; but these clear principles may be deduced from them: It is a conclusion in equity, that where any person having a claim on a mán’s estate independently of him, and also a claim on his estate under his will, which claims are repugnant to each other, pursues the former, the latter is thereby waived or abandoned. This was the case of Noyes v. Mordaunt, 2 Vern. 581, and Streatfield v. Streatfield, Talbot, 176. In other cases it is put in this way: that no one claiming *25 Under a will, shall have any part of the estate to the disappointment of those' to whom it is given by the will. If they will have the estate, chancery will take away their legacy/ You cannot come into a court of justice claiming repugnant rights.. The principal question is, whether such taking induces absolute forfeiture, or only imposes an obligation to indemnify the claimants when it disappoints them. In England, though decisions and dicta have been both ways, the latest authorities seem to sanction the doctrine of compensation: that when a case of election is raised, it does not give a right to retain the thing itself, though it gives a right to compensation out of the thing devised to a legatee attempting to defeat the devise to others. Chancery would sequester the thing devised, to make compensation and satisfaction to the disappointed devisee. This subject is very, fully considered in a note to 1 Swanston Ch. Rep. 425, in which all the cases extant are reviewed. But the dif-' Acuity with us would be, how to get at the compensation. A conditional verdict, under the equitable powers of the court, restraining execution till the compensation has been made, or the amount of the legacy and bequests to the widow applied, has not yet been adopted. So far as I have any knowledge of the practice, it has been considered as a bar to the recovery. In Miller’s Lessee v. Gibson, this was so considered by the court of Nisi Prius at Carlisle, by Justices Yeates and Smith; and in Hamilton v. Buckwalter,2 Yeates, 392, M‘Kean C. J., said, the entry and possession of the. widow upon the land devised to her, was not a suspension merely, but an utter extinguishment of her right of dower. . But the acts of assembly to which I have referred, seem to put the question at vest, by enforcing the widow to make choice: if she does so make choice, and has not done any act previously to determine her election, before slie can take under the will she must renounce her dower. • But, in the present case, I think the demandant has made a binding election, and one that bars her recovery. The agreement and receipts to the executors, are, in my mind, conclusive. The determination of her election was by plain and explicit acts. Her bare receipt for the articles bequeathed to her would not have been sufficient; but the agreement, release, and receipts, taken in connexion with the document in the Register’s Office, was with full knowledge of the circumstances of the testa-. tor and her own rights — unequivocal acts, performed not in ignorance, but with full knowledge; not by inadvertency, but by choice; and where the demandant cannot restore the plaintiff in error to the same situation, as if these acts had never been done. But even if she were yet at liberty to make her election, it must be by surrender to the disappointed devisees of all the bequests under the will, or their value.. This should be a condition precedent — tender be-. fore action brought: in no other way could compensation or satisfaction be made. In case of her rejecting the will, the property did not vest in either the executors or the residuary legatees: if they *26 agreed that the widow should hold it,' and that she has the right to it, it could only be for the reason that she accepted it under the wills if she did not, she could neither reserve it, nor they relinquish it. Chancery would sequester for the purposes of the will: if they .would sequester the fund for that.purpose, on the principles on which equity is distributed in this country, the satisfaction, should be made in the first instance, — it should be the first Step.
By the doctrine of sequestration to make compensation, the intention of the testator, so far as circumstances will admit, is effected; by the doctrine of forfeiture, that intention, in many cases, would be defeated. If, in Pennsylvania, the forfeiture would not be exacted absolutely, still it would be a forfeiture, until the party made compensation and satisfaction. But though the usual course, in England, is to resort to a court of equity, because at law the party cannot be put to elect, yet even courts of law apply the principle of election; and it is a good defence in á court of law, where the party has acted upon it in such a manner as to be concluded by what he has done; that is, to have elected; But if it be a matter only in equity, equity would grant relief in case of a recovery at law in an action of dower, where the devise was in bar of dower, (as all devises here are, by positive law,) and carry into execution the trust of the will. 2 Vern. 366. For a history of this case, see note to 1 Swanston, 398. If there had not been an election here, then how would the case stand? John Cauffman and Isaac Cauffman would, if the widow proceeded against them in a claim of dower, be entitled to the bequests to the widow, each in proportion to the value of the land devised to them. But I judge the widow to have so acted, to have so elected to take to the will wholly, (for:she could not do it partially,) as to have foreclosed herself from now maintaining this action of dower. I have not considered it necessary to go formally through all the objections made to the opinion of- the court. The way in which it was argued, and properly argued, too, was on one general objection — on the doctrine of election — on which the Cause mainly rested.
It is proper to notice the doubt expressed by the court as to the widow’s right to the personal property, on her repudiating the will, under the intestate law. There is no foundation for this doctrine. The- husband can strip'his wife of all the personal property by the will; and so he has done here, except so far as he has bequeathed her; and the jury would naturally be misled by what the court say, or their supposition, “ that the agreement of the parties was or might have been, that the money and articles bequeathed to her, should go to her as her part of the personal estate, agreeably to the intestate laws: and that would not alter the case, for she would not have received them under the will, but in opposition to the will.” There is no evidence of any such mistaken views between the parties. The highly respectable counsel, who advised the-measure did not fall into this errorj or lead their clients into it.
*27 I add, in conclusion, that the claim of the widow is to deprive the defendant of the whole property devised to him, to defeat in toto the provision intended by his grandfather, clear of taxes and repairs. The house .would not rent for more than two hundred dollars, — the charge of three thousand dollars to be paid to his brothers and sisters: the interest of this money would leave him little more than twenty dollars per year.; and, if the widow recovers in dower* instead of a benefit it would be a burden to him. Rights of widows to dower are favourite rights, but are not to be favoured by the sacrifice of the interest of others. Now, here, the sacrifice of the rights of this infant is very apparent. Rupp and Eberly had nothi.ng under the will which could be affected by any claim of dower. Isaac’s estate, though much more valuable than John’s, is compromised by giving up to the widow every thing given to her by the will, and four hundred dollars, — twenty-four dollars per year; so that this compromise is effected by talcing the compensation which John would be entitled to by the rejection of the will, to make up a consideration to the widow for the release of Isaac’s l<mds from the claim of dower. And, though it doth not appear on the record, yet it is admitted that Rupp and Eberly, the sons-in-law, held lands by conveyance from the testator, in which the demandant did not join; so that all gained but John by this compromise, made at his expense, and with the consideration that John would be partly entitled to some compensation. These, s'ons-in-law would not be entitled to any satisfaction, if the widow had recovered in dower from them. John could neither recovér from- Isaac nor from the executors, any satisfaction, as has been supposed by the defendant in error. It is admitted John should have satisfaction somewhere, from somebody, out of the thing devised to the widow. From the widow he cannot gain it, because she has givfcn the executors a receipt for it, under the will: they stand acquitted from Isaac: he cannot gain it in any form of action; and, unless he can retain the thing devised to him, he is without remedy. ■ The widow took the whole devised to her from the executors, and /in exact and literal conformity to the will. , The parties, by their agreement and release, attempted to do that which the law.would not allow; v.iz. to take the thing devised to her, and defeat the will of the testator, as • to the devise of John. Instead of declining altogether by her deed all claim under the will, she reserves in explicit terms all her bequests under it; in addition to this, she is also to have the compromise from Isaac, — four hundred dollars: This was a clear, manifest assumption of property, hy virtue of the will. She certainly never did relinquish her claim under the will, but reserved it, exacted it, and received it from the executors, and now enjoys the particular privileges in the mansion house of the testator. She accepts-the benefit, while she declines the consequences. She says, “ I reserve all benefits under the will of my husband; but I shall retain to myself the right to disappoint John of what hjs grandfather has given *28 him. She takes the benefit of the bequest, though she discards the condition annexed to these bequests — not to disappoint John, the devisee. Now, to accept the benefit, while she declines the burden, is to defeat the design of the donor. I hold she cannot say, “I will retain what is given me by the will with a salvo, that I do> not mean by this to give up John. My.intention is, to take both the bequest and the dower out of his estate.” Now this she cannot do.
Equity, if she had not made her election, and had brought a writ of dower, would stay her suit at law. The earliest case on this-subject, is noticed, 1 Swanston Ch. Hep. (in note,) 397, which was a ¡suit at law in a writ of dower, brought by the defendants. The bill for relief stated,- that the defendant’s wife had certain copyhold lands devised to her in lieu of her thirds at law, which she accepted and enjoyed twenty years, and yetseeketh now'to recover dower of the freehold lands. The defendants demurred, because copyhold lands can be no bar to dower; but the court say, that it is no conscience she should have both, and therefore ordered to answer. The defendants were afterwards permitted to proceed to a judgment on the trial'at law with stay of execution. Wherever chancery would restrain execution, óur courts of common law would hold there should be no recovery, as this is the only way in which equity could be administered; for'the conditional verdict and judgment, though frequently, resorted to, to enforce equity, yet never have been applied to cases of election. , But the election and acceptance here were perfect, and the right to choose again extinct.
1 am therefore of opinion, for all these reasons, that the judgment should.be reversed. '