[PHILADELPHIA, FEBRUARY 13, 1832.]

## HERON *against* HOFFNER and Others,

### IN ERROR.

| 3r  393|
|158  649|

. 3r  3J3
'e3J3C'124

Testator appointed his wife and his two sons executors of his will, by which he authorised them, and the survivors and survivor of them his said executors, the better to enable them to pay his debts and legacies, and to make division of his estate among his residuary devisees, to sell and dispose of all or any part, of his real estate at public or private sale, &c. His widow did not join in making probate of the will and taking out letters testamentary, which was done by the sons. She did not appear before the Register, or make or send to him any renunciation either written or verbal. It did not appear she was asked to join in proving the will and taking out letters testamentary, or that any notice was given to her of the time of its being done by the others. The other two executors agreed to sell a lot of ground, part of the estate of the testator, to the defendant, and a deed to him from the three executors was written, but the widow refused to execute it. A deed was afterwards executed by the other two executors and tendered to the defendant, who refused to accept it, saying at the time, that he had no money to pay for the property. An action of *assumpsit* was then brought against the defendant, in the name of the *three* executors, in which the declaration set forth the sale of the lot by the sons, two of the plaintiffs ; that the defendant upon his contract became liable to pay them the price agreed upon, and concluded by assigning a breach in the nonpayment thereof to the said two executors. After the trial of the cause in the court below, the widow signed and sealed a renunciation as executrix.

*Held,* that the action could not be supported.

*Held,* also, that the deed tendered by the two executors to the defendant, was not sufficient to vest in him a good title to the lot.

A widow's claim to dower may be barred by her election, by matter *in pais,* to take a devise in her husband's will.

ERROR to the District Court for the City and County of *Philadelphia.*

*T. Sergeant,* for the plaintiff in error.

*Rawle,* for defendants in error.

The opinion of the court, which renders any other statement of the case unnecessary, was delivered by

KENNEDY, J.—This was a writ of error to the District Court of the city and county of *Philadelphia.* The defendants in error were the plaintiffs below, and brought this action against the plaintiff in error to recover seven hundred and five dollars the price of a lot of ground sold by *George* and *John Hoffner,* two of the plaintiffs below, as executors of the last will and testament of *George Hoffner,* Senior, deceased. The clause in the will under which it is alleged that the sale was made, is in the following words ; " I nominate and appoint my said wife *Catharine,* and my sons *George* and *John Hoffner,* executors of this my last will and testament, and I authorise them and the survivors and survivor of them my said executors, the better to enable them to pay my debts and the legacies herein given, and to

make division of my estate among my residuary devisees, to sell and dispose of all or any part of my real estate, either at public or private sale for the best price that can be reasonably had or gotten for the same, and to grant and convey the same to the purchaser, or purchasers thereof his or her or their heirs and assigns forever."

The declaration is in *assumpsit,* in which the plaintiff in error is said to be attached to answer *Catharine Hoffner, George Hoffner* and *John Hoffner,* executors of the last will and testament of *George Hoffner,* Senior, deceased; after which these three plaintiffs below all join in making complaint, and in setting forth the cause of action: but the sale of the lot for seven hundred and five dollars is stated to have been made only by *George* and *John Hoffner,* two of the plaintiffs below, and that *Heron,* the defendant below, upon his contract with them became liable to pay to them the seven hundred and five dollars, and being so liable, in consideration thereof, promised to pay to them, the said *George* and *John,* the said seven hundred and five dollars, when &c., and concludes by assigning a breach in the nonpayment of the seven hundred and five dollars to them the said *George* and *John,* &c.

*Catharine Hoffner* did not join in making probate of the will and taking out letters testamentary. This was done by *George* and *John Hoffner,* the sons. *Catharine* did not appear before the Register at all, nor make nor send any renunciation to him either written or verbal, until after this suit was tried in the court below. It did not appear that she was even asked to join in proving the will and taking out letters testamentary, or had any notice given to her at the time of its being done by the others. Neither did it appear that she had been consulted about selling the lot or that she had had any thing to do with it. Sometime after the sale was made, a deed of conveyance from *Catharine, George* and *John* to *Heron,* was written with a view of being executed by the three executors named in the will. It was presented to *Catharine* with a request to execute it, but she refused; she said that she had consulted with some of her friends, and that they had advised her not to sign any paper. She appeared to be not well pleased, and when pressed to sign the conveyance said, that *George* and *John* had taken every thing into their own hands, and that they might go through with it. After the trial of the cause on the 27th of *January,* 1829, she signed and sealed a renunciation.

The sale of the lot to *Heron* by *George* and *John Hoffner* was fully proved; that the price was seven hundred and five dollars; that a deed of conveyance for the lot executed by *George* and *John Hoffner* only to *Heron,* was tendered to him before the commencement of the action, and that he refused to accept of it, saying at the same time, that he had no money to pay for it.

It was contended by the counsel for the plaintiff in error in the court below, that if the sale was valid, *Catharine Hoffner* was not a party to it, and ought not therefore to have been joined with *George* and *John Hoffner* as plaintiff in bringing the suit. The court

however told the jury that she was rightly joined with the others as a plaintiff in bringing the suit : That this would have been right even in case she had renounced, and *a fortiori* so since she had only refused to do a particular act, and that the law was, that where there were several executors, and one renounced, he might come in afterwards and join his fellows : That the suit was always, and perhaps must be, in the name of all.   This is the ground of the first error assigned.

The court below seem to have fallen into an error by viewing and considering this action as one brought by the plaintiffs below in *auter droit*.   It is not so ; so far from being founded upon a contract or transaction to which the testator in his lifetime was a party, which is the true test of a suit being in *auter droit*, that it is for a breach of a contract made by two of the defendants in error with the plaintiff in error.   But as *Catharine Hoffner* was no party, and did not join with *George* and *John Hoffner* in selling the lot, but on the contrary refused, she ought not to have been joined with them in bringing the suit.

The proving of the will by one executor, where there are several, is sufficient no doubt for all ; and any one or either of them may act afterwards as if they had all joined in proving it.   Either may receive debts owing to the testator's estate, and give acquittances for or release them, 9 *Co.* 34—40, *Hensloe's case,* and 5 *Co.* 28, *Middleton's case.*   And if an action be brought, it ought to be brought in all their names, notwithstanding the refusal.   *Touch. of Prec.* 29. *Went. Exr.* by *Jeremy,* 95.   But this has a reference to actions brought in *auter droit,* and is not applicable to causes growing out of contracts made and entered into by the acting executors only, and more especially as in this case where the refusing executrix positively refused to join in the contract, or to have any thing to do with it. The rule that the *probata* must correspond with and support the *allegata* is applicable in all cases.   But in this case the suit is brought in the names of three plaintiffs below, and the proof is that the contract upon which the plaintiffs there claimed to recover, was made only by and with two of the three.   It is however, contended, by the counsel for the defendants in error, that the joining of *Catherine Hoffner* with *George* and *John,* if wrong, ought to have been pleaded by the plaintiff in error in abatement, and 1 *Chitty's Pl.* 12, has been cited to sustain this proposition.   It is there said, that if one only of two executors bring a suit, the defendant may pray *oyer* of the probate, and if he wishes to take advantage of the omission he must plead it in abatement.   To this it may be replied, that this is only when a suit is brought in *auter droit,* and not in the plaintiff's own right ; for in that, as *Chitty* observes, the omission would be cause of nonsuit, pages 7 and 14.   In the next place this is not the case of a non-joinder, but a mis-joinder ; and it is a rule well established in all cases, as well in case of plaintiffs as of defendants where the suit is founded upon a contract, that if any one or more join, or be joined in it who were not parties to the contract, and had no legal interest

(Heron *v.* Hoffner and others.)

in it, or are not the representatives of those who were, in case of the death of either party to the contract, such suit cannot be sustained, 1 *Chitty's Pl.* 7, 8. 33—36. The reason of this rule is as strong with respect to plaintiffs if not more so, than it is as to the defendants; because every person who is a party to a contract, must, from the very nature of the thing itself, know all who are associated with him, either in interest or in form, in making the contract, and if he afterwards bring a suit upon it, he is bound not to join with himself those who were not joined with him in making the contract, and had no interest in it whatever. But with respect to those who may be liable to him upon the contract, he may not know them all; yet he will not be permitted to harass and vex men with suits against whom he can adduce no evidence, and if he does join some as defendants against whom he can produce no evidence, he must fail in his suit and submit to the penalty of paying the costs of it.

There is an incongruity upon the face of the declaration in this case; and the irregularity of which we have been speaking, is there manifest. The complaint is made by *three,* and the defendant in the court below is called upon to answer the complaint of *three,* yet the cause of action set out is the breach of a promise made *to two only* of the three, in which it does not appear that the third had any interest either legal or equitable. I think, therefore, that there was not only error in the charge of the court below, but also on the face of the declaration itself, in regard to this point.

There is no error in that part of the charge of the court below, to which the second exception has a reference. It has been decided by this court in the case of *Cauffman* v. *Cauffman,* 17 *Serg. & Rawle,* 16, that a widow to whom a legacy or devise is given by the will of her husband, which if accepted of by her, would be a bar either under the will, or under our act of assembly, to all future claim of dower at law, may make her election *in pais,* and shall be afterwards bound by it, where it is done freely and deliberately by her with a full knowledge of the facts and her rights; as demanding and receiving payment of a legacy from the executors, taking possession of a devise, or accepting of an assignment of dower, and taking possession of it, or prosecuting and recovering by suit a legacy, devise, or dower at law, all or any of which acts, would be an election, and sufficient to bind her afterwards without a proceeding by citation from the orphan's court of the county, as is prescribed by the act of assembly of the first of *April,* 1811. The object of this act in that particular, was to provide a mode whereby the election of the widow might be compelled, and made manifest in cases of neglect or unwillingness to do so, or where any uncertainty existed about its having been done.

The third and only remaining error, is to the charge of the court in directing the jury that the deed of conveyance executed by *George Hoffner* and *John Hoffner,* two only of the executors named in the testator's will, and not by *Catharine Hoffner,* the executrix therein also named,

(Heron *v.* Hoffner and others.)

and tendered to the plaintiff in error, was sufficient to vest in him a good title to the lot. From the words of the will I think it clear that it was the intention of the testator to give his executors *virtute officii,* power to sell and convey his real estate, of which this lot was a part. He first nominates and appoints them by name, as must necessarily be the case if done at all, and then directs in these words, " I authorise *them.*" Now the next antecedent to the pronoun " them" is the word " executors," and would in grammatical construction be precisely the same as if he, after naming and appointing his executors, had used these words, " I authorise my executors," or the " executors of this my last will and testament and the survivors or survivor of them my said executors, &c. to sell, &c." If any thing further were wanting to evince this intention, and to prove the propriety of this construction, it is the object, at least in part, as declared by the will itself, for which this power was given, and to be executed, which was to raise money to *pay the testator's debts,* which belonged particularly to the office of the executors. The present case is much more clear, that it was the intention of the testator to grant this authority to his executors, to be exercised by them *virtute officii,* than it was in the case of *Zebach* v. *Smith,* 3 *Binn.* 69, where it was held, that a sale made by one of three executors, under a power in the will was good, the other two having *renounced* immediately after the death of the testator and *before* the sale. But since the passage of the act of assembly of the 12th of *March,* 1800, this distinction in most cases may not be considered a very important one, because by the provisions of that act, where two or more executors are authorised by their individual and proper names, to sell and convey the real estate of the testator, or any portion of it, and one or more of them should refuse to join in proving the will, or renounce, the other or others of them, who prove the will, and consent to act, may execute the power granted to sell the real estate. It is argued by the counsel for the defendants in error in this case, that *Catharine Hoffner did refuse* to join in the probate and execution of the will, and never did do any act whatever as executrix under the will, and that the sale made of the lot to the plaintiff in error by *George* and *John Hoffner,* the two executors who proved the will, is therefore good either under a proper construction of the will itself, or of the act of assembly. This raises the question as to what does amount to a *refusal* or *renunciation* mentioned in this act of assembly. It has been argued by the counsel for the defendants in error, that a mere *verbal* refusal made *in pais,* is sufficient without appearing before the Register of wills and having a record made by him of it ; and such a refusal is sufficient without any citation having been issued by the Register, and served upon the refusing executor, requiring him or her to appear before the Register within a given time, and either to accept of the executorship or renounce it. For the second section of the act declares " that in all cases where such devises (that is, where the testator has or shall thereafter devise his real estate or any part of

(Heron *v.* Hoffner and others.)

it to his executors to be sold, or has authorised and directed, or shall authorise and direct the same to be sold by his executors) have been or shall be made, or such authority and direction given, if one or more of such executors hath or have *refused,* or shall hereafter refuse, or hath or have renounced, or shall renounce, it shall and may be lawful for the *acting* executor or executors to sell and convey such real estate and act otherwise respecting the same as fully and completely as he, she, or they, together with such refusing or renouncing executor or executors would be empowered to do, if he, she or they had not refused or renounced."

Previously to the passage of this act, the terms, " refuse" and " renounce," had been used in reference to a course of proceeding practised by the ordinary in *England,* and by the Register of Wills in *Pennsylvania,* to ascertain, and to have it distinctly known, whether executors who neglected to appear before the ordinary or Register and prove the will, or renounce or refuse to take upon them the office of an executor, were willing or not willing to prove the will, and take out letters testamentary upon it ; and had, as I conceive, in this respect acquired a meaning of a fixed and determinate character. The sense in which they were understood before and at the passage of the act is the one which the legislature must have intended should be given to them in expounding it. Here the Register of Wills is substituted for the ordinary in *England,* whence we have borrowed a practice that became the law of this state before the passage of the act, as well as since, for the Register, before granting administration, where a will is made and executors named, if he knew of it, to send a citation to the executors to come before him, and prove it. If they neglect or refuse to come, or do appear but refuse to take out letters testamentary, and take upon them the execution of the will, the Register in either case, must then commit administration *cum testamento annexo* to the next of kin of the testator, or perhaps to the residuary or principal legatees in the will, as they would have an interest in making the most of the estate by care and good management. If the executors appear before the Register, but refuse to prove the will or renounce, it is his duty to make a record of it ; so if they neglect or refuse to appear upon a citation being issued and served upon them, a record of the issuing of the citation, service and neglect to appear and prove the will must be made by the Register. A mere *verbal* refusal made *in pais,* or before neighbours, and proved by them, without a record being made of it by the Register, will not justify him in committing administration *cum testamento annexo,* nor be such a refusal or renunciation as is contemplated by the act of assembly. *Went. Ex.* by *Jeremy,* 88. 3 *Bac. Abr.* tit. *Executors,* 43. *Tol. Exr.* 40, 41. Executors may not only renounce in person before the Register, but by proxy, or by letter addressed or sent to him, of which he ought to make a record. *Tol. Exr.* by *Ingraham,* 42. *Went. Ex.* by *Jeremy,* 88-9. No particular form is required in making out a renunciation ; anything reduced to writing which manifests

(Heron *v.* Hoffner and others.)

the intention to renounce or to refuse undertaking the execution of the will is sufficient, as *ego dico me nolle esse hæredem*, Sir *H. Goodyer's* case, 1 *Lev.* 135. So where the executors wrote a letter to the judge of the prerogative court, that they could not attend to the execution of the will, and desired him to commit administration to *Henry Goodyer*, the next of kin to the testator, it was held a sufficient renunciation. And in the case of the *Commonwealth for Huston* v. *Mateer*, 16 *Serg. & Rawle*, 418, a letter written by the executors named in the will, declining or refusing to appear before the Register to make probate and take out letters testamentary, was held a sufficient renunciation or refusal to warrant him in committing administration *cum testamento annexo*. See *Broker* v. *Charter, Cro. Eliz.* 92. It does not appear from any part of the act of assembly in relation to this matter, that it was the intention of the legislature to use these terms " refuse" and " renounce," in a sense different from that in which they had been previously used, when applied to the case of executors named in a will, refusing to prove it or renouncing their executorship. The act was not passed for the purpose of making any change in the established mode or manner and course of proceeding by the Register to ascertain whether the executors named in the will would prove it or not, or intended to renounce. The great object of it was to prevent a failure of the execution of the powers granted in the will to the executors therein named, as often as they or any of them should *renounce* or *refuse* to prove the will. And the third section shows this so clearly that it is impossible to doubt about it; because by it the administrators *cum testamento annexo* who had been commissioned before the passage of the act, upon the *refusal* or *renunciation* of the executors are expressly embraced. Now the *refusal* or *renunciation* spoken of here must necessarily mean such as had justified the Register in committing administration with the will annexed anterior to the passage of the act; the nature of which has already been shown and established. Then this section proceeds next to give the same authority to the administrators with the will annexed, in all subsequent cases where commissions shall be granted by the Register of wills in cases of *refusal* or *renunciation* of the executors or any of them, using the same terms without variation, and of course embracing those administrators *cum testamento annexo*, who should be appointed by the same course of proceeding, and upon similar events as was customary before the act. The propriety and expediency of this course, of having a record made of the refusal or renunciation of executors who decline or refuse to take upon them the execution of the will, and disregarding and holding insufficient a mere *verbal* refusal made *in pais*, I think cannot be questioned. It is calculated to promote the intention and wishes of the testator in having his will executed by those whom he has designated for that purpose, if they should be willing to undertake; if, however, they should be unwilling, it is well calculated to have that fact ascertained with certainty, so as to prevent mistake or misapprehension in

(Heron *v.* Hoffner and others.)

respect to it, which might, and no doubt would often occur if, parol evidence of a *verbal* refusal were to be received and considered sufficient. In short it prevents litigation.

Now, as *Catherine Hoffner* never did refuse or renounce otherwise than *verbally in pais*, without any record or writing being made of it whatever, until long after the sale was made of the lot to the plaintiff in error by *George* and *John Hoffner*, nor indeed until after this suit was tried in the court below; and having refused expressly to confirm the sale by joining in the execution of a deed of conveyance to the purchaser, I consider that the power granted in the will to sell the lot was not well executed, and that the deed of conveyance which was tendered to *Heron* did not vest in him a title to the lot. It has, however, been urged by the learned counsel for the defendants in error, that as the plaintiff in error did not make this or any objection of the kind to the deed when tendered, he thereby waived it, and cannot make it now. It is true that the purchaser of property who, by the terms of his contract, has a right to require a deed of conveyance at the time fixed for paying the purchase money, may dispense with the tender of it by the vendor who comes to demand the purchase money, as by declaring that he wants no deed and will not pay the purchase money upon any terms, nor accept of a deed of conveyance. By doing so he will subject himself to an action at the suit of the vendor, and the recovery of damages; but still, I apprehend, that the vendor when he proceeds to recover the purchase money, ought at least to show that he had it in his power to make a good title, because he will be bound to make it upon the payment of the purchase money. It would be gross injustice were it otherwise. Here the vendors were not only unable to make a good title, but there was a radical defect in the contract for the sale of the lot for want of a power at the time on the part of the vendors to make such a contract. The obligation of every contract must be reciprocal, and unless it was binding upon *George* and *John Hoffner*, it was not so upon *Heron*. The vendors could not support the action, I think, without being able to make, at the time of its commencement, a good title to the vendee.

The judgment of the court below is reversed.