# Weidner's Estate.

*Executors and administrators—Grant of letters—Renunciation.*

1. An oral renunciation of a right to administer, when acted upon may so far estop him who makes it that at his instance, letters granted in pursuance thereof will not be revoked except as a matter of discretion.

2. A son of an intestate has no standing to demand that letters of administration granted to his sister shall be revoked, where it appears that he knew of his sister's application for letters, and that although she proposed to him that notwithstanding her pending application, he should take out letters, yet he not only declared to her that he would not do so, but expressed to her his assent to her going on with her application and taking out letters under it, and thereafter made no objection thereto until after letters were granted to her, and her bond was approved, although he had ample opportunity in the meantime to do so. In such a case the renunciation may be inferred from the mere oral declarations of the son.

Argued Nov. 16, 1908. Appeal, No. 15, Oct. T., 1907, by George A. Weidner, from decree of O. C. Chester Co., dismissing appeal from Register of Wills in Estate of Joseph Weidner, deceased. Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ. Affirmed.

Appeal from register of wills.
The facts are stated in the opinion of the Superior Court.

*Error assigned* was in dismissing the appeal.

*Frederick A. Sobernheimer,* with him *Walter S. Talbot* and

*Jeremiah K. Grant,* for appellant.—The granting of the letters to the sister, H. Etta Lahr, the appellee, was improvident. It was the duty of the register of wills to have before him, in writing, the fact that the plaintiff had renounced, and such renunciation filed of record: Muirhead v. Muirhead, 3 Smedes & Marshall, 451; Arnold v. Sabin, 55 Mass. 525; Heron v. Hoffner, 3 Rawle, 393.

It has always been the custom and law in Pennsylvania that the register of wills will not grant letters to a person out of the class designated and authorized by the act of 1832, without first giving notice to the person first entitled thereto, or having filed of record a renunciation by such person: Williams's App., 7 Pa. 259; Bieber's App., 11 Pa. 157; McClellan's App., 16 Pa. 110; McCaffrey's Est., 38 Pa. 331; Jones's App., 10 W. N. C. 249; Levan's App., 17 W. N. C. 289; Mintzer's App., 111 Pa. 524; Ross's Est., 1 Pa Dist. Rep. 744; Kelly's Est., 15 Pa. Dist. Rep. 427; Ellmaker's Est., 4 Watts, 34; Job's Est., 23 Pa. Superior Ct. 611.

*A. Lewis Smith,* with him *I. Newton Wynn* and *William M. Hayes,* for appellee, cited: Wilkey's App., 108 Pa. 567.

OPINION BY RICE, P. J., April 12, 1909:

The decedent died on January 20, 1905, intestate. His wife died before him, and his surviving children were two sons, George and Harvey, and two married daughters, Elizabeth Bachman and H. Etta Lahr. George, the appellant, was the oldest son. On March 17, 1906, letters of administration were granted by the register of wills to Mrs. Lahr upon her petition filed with his predecessor in office on February 13, 1905, and on the same day that letters were granted her bond, dated February 13, 1905, was approved.

On March 30, 1906, George presented his petition to the register of wills praying for a rule on Mrs. Lahr to show cause why the letters should not be vacated and revoked, and letters be granted to him. Upon the hearing of this petition all the parties interested, except Harvey Weidner, appeared before the register, and, according to the written findings of fact filed

by the register with his decision, adduced testimony relative to the qualifications of the petitioner and his alleged renunciation. So far as now appears, he had as full opportunity to be heard as if the register had pursued the regular course of issuing a formal citation to him before granting the letters to the appellee. The register's decision was as follows: "And now, May 10, 1906, the register of wills after carefully reviewing the testimony submitted before him, and having heard argument for and against the application for the granting of said letters, is of the opinion that he had made the proper selection from the class entitled to letters, and the one to whom letters have been granted, is the proper person who will best administer the estate, and refuses to revoke the same." From this decision George took an appeal to the orphans' court, which, having been put at issue by petition and answer and heard de novo before both judges, resulted in the decree, now before us for review, dismissing the appeal and sustaining the action of the register.

The learned judges below based their decision upon two grounds, one of law and the other of fact, which we state substantially in their words: 1. "That an oral renunciation, acted upon, would so far estop him who makes it, that at his instance, letters granted in pursuance thereof, would not be revoked, except as matter of discretion;" 2. "that the proof, in character and extent, so preponderates in favor of the alleged renunciation, that it must be found as a fact." The court then sets forth the form and terms of the oral renunciation and the time and circumstances under which it was made, by referring to, and quoting in part, the testimony of Mr. Wynn, as being a substantially accurate statement of the transaction. In order to bring clearly into view the precise question for decision we quote this part of the court's findings and opinion: "In May of 1905, Mr. Wynn was in Philadelphia with the parties to the controversy. He testifies in part: 'We went across the street to the corner of Fifteenth and Penn square. There were present in the group, John Lahr, his wife, Harvey Weidner and myself. George said: "I could have settled this estate and administered to it." I said: "George, it is not too late

yet. Mrs. Lahr has only filed an application to save her the trouble of coming down, and if you want to administer you go up and administer to the estate and settle it." He said: "No, I will not administer to the estate." He said: "Et.," meaning his sister, "and you have started this and you can go on and take out letters and finish settling up this estate, and whenever you want me, I will give you my address," and he gave it to me.' The administratrix corroborated Mr. Wynn, as, to a substantial extent, did her husband."

There was testimony in conflict with the foregoing, but, it must be remembered, the hearing was before both judges of the court, who had better opportunity to judge of the credibility of the witnesses who testified in their presence, than we have; hence, according to well-settled and familiar principles, their findings of fact based upon competent testimony, must be accepted by us, there being no manifest error. We have then a case wherein it appears that a son of an intestate, who though entitled, prima facie, to be preferred over his sister in the granting of letters, yet with express notice of the pendency of her application before the register of wills to have letters granted to her, and although she proposed to him that notwithstanding her pending application he should take out letters, not only declared to her that he would not do so, but expressed to her his assent to her going on with her application and taking out letters under it, and thereafter made no objection thereto until after letters were granted to her and her bond was approved, although he had ample opportunity in the meantime to do so. Was the appellant in position to demand as matter of right that the action of the register be annulled and letters be granted to him? It is to be noticed that letters were not granted to a stranger but to a member of the class to which the appellant belonged. This distinguishes the case from many of the cases cited by his counsel. But, as in selecting from next of kin, males are preferred by the statute over females, it is clear that if the appellant was competent and ready to act, the register could not go by him and appoint the appellee unless he waived his preference. This he could have done by a written renunciation or waiver filed with the register, but that was not the only.

way. If, for example, he had been cited to appear before the register to show cause why the appellee's application should not be granted and had failed to appear, or having appeared, had orally declined to take out letters himself, or had orally assented to letters being granted to her, it would be competent for her, upon the hearing of his subsequent petition to revoke the letters granted to her, to prove the circumstances under which they were granted. Doubtless, in such a case, it would be the better practice for the register to make a record of the action of the appellant, but that it is absolutely essential to the validity of the appointment, we cannot admit. If there is any Pennsylvania case holding the contrary it has not come to our notice. Heron v. Hoffner, 3 Rawle, 393–398, is not such a case. That related to the probate of a will and the issuing of letters testamentary to two of the persons named therein as executors without notice to the third person, and without her appearing before the register or sending to him any renunciation, either written or oral. A perusal of the opinion will show that it was governed by principles which are not controlling here. Moreover, in Ralston's Estate, 158 Pa. 645, the present chief justice, speaking of implied acceptance or refusal of executorship or trusteeship, said: "Delay and inaction so far from raising a presumption of acceptance, are generally treated as evidence of refusal, 7 Am. & Eng. Ency. of Law, 200, and though there are in this state many expressions that the refusal must be in writing and of record, Com. to use v. Mateer, 16 S. & R. 416; Heron v. Hoffner, 3 Rawle, 393; Miller v. Meetch, 8 Pa. 417; Bowman's Appeal, 62 Pa. 166; yet that point was not probably meant to be decided as broadly as the expressions, apart from the circumstances of the particular cases, would seem to imply." The cases there referred to are certainly not authority for the proposition that waiver by males of their statutory preference in the granting of letters of administration must necessarily be in writing and of record. But it is insisted that the mere oral declaration of the appellant to the appellee, that he would not act, and that she could do so, although proved to the satisfaction of the register, was not sufficient to authorize the register to appoint the appellee. How the case would be if this were

the only fact tending to show waiver it is unnecessary to decide. It is not the only fact. Coupled with it are the facts that at the time he made these declarations he was notified and seemingly knew it before, that the appellee's petition was pending before the register, the fact that ten months elapsed between the date of these declarations and this notification and the date when letters were issued, and the further fact that during all of this time he remained inactive. From the facts taken as a connected whole we are all of opinion that there arose a waiver of the preference claimed by the appellant, which, not being retracted until after the appellee acting on the faith thereof had taken out letters and given bond, estopped him to demand as matter of right that he be substituted for her.

We have considered the case entirely from the standpoint of the opinion of the learned judge below. There was evidence before the court which, if credited by the judges, would have warranted them in holding that upon other grounds letters could properly have been refused to the appellant. But, as the conflicting testimony upon those subjects has not been passed upon by the court below, we deem it proper for us to omit considering it.

The decree is affirmed at the costs of the appellant.