[Philadelphia, January 7, 1836.]

## LEWIS *against* PRATT.

APPEAL.

1. The decision of a Register's Court on an issue *devisavit vel non*, is not conclusive, in proceedings in the Orphans' Court to obtain partition.
2. Where by an alleged will, a tract of land was devised to one of several children of the decedent, who was in possession thereof; and upon an issue directed by the Register's Court to try the validity of the will, a verdict and judgment were given against the will; and afterwards the parties claiming in opposition to the will, instituted proceedings in the Orphans' Court to obtain partition of the land; it was *held*, that notwithstanding the decision in the Register's Court, the Orphans' Court was bound on the application of the alleged devisee, to stay proceedings in the partition, until the petitioners should establish the intestacy of the decedent in an ejectment to be brought by them against the alleged devisee.

This was an appeal by Robert Lewis, from the Orphans' Court of Delaware County, where certain proceedings had taken place in partition, under the following circumstances.

Azariah Lewis of Newtown township, in the county of Delaware, died on the second day of July, 1831, seized of the real estate which was the subject of the proceedings in this case, and leaving a paper writing purporting to be his last will and testament, wherein the said real estate was devised to his son Robert Lewis the appellant in fee, subject to the payment of certain legacies, and also to certain privileges to his daughter Hannah Lewis. Against the probate of this paper a caveat was entered in the office of the register of said county; a register's court was called, and an issue directed to the Court of Common Pleas to try the question whether the paper writing was or was not the last will and testament of Azariah Lewis, deceased. In November of the same year the issue was tried, and a verdict was rendered in favour of the plaintiff confirming the said paper writing; but the judgment on the verdict was reversed on a writ of error to the Supreme Court, for an erroneous direction of the court to the jury upon the effect of certain evidence.*- The issue came on again to be tried in the month of August, 1834, when a verdict was rendered in favour of the defendant and condemning the said paper writing; and the judgment on this verdict was affirmed by the Supreme Court.† Robert Lewis, however, continued in pos-

* *Baker* v. *Lewis*, (4 Rawle, 356.)       † *Lewis* v. *Baker*, (5 Rawle, 114.)
VOL. II.                        11

session of the real estate under the paper writing purporting to be a will.

On the 8th of May, 1835, Henry Pratt presented his petition to the Orphans' Court of Delaware County, setting forth in substance that Azariah Lewis lately died intestate, leaving a widow named Hannah, since deceased, and issue three children, to survive him, to wit, Margaret, intermarried with Jacob Maule, Hannah Lewis and Robert Lewis, and also several grandchildren, viz. Susan intermarried with Henry Pratt the petitioner, and Unity Garrett (the said Susan and Unity being children of Unity Garrett, a daughter of said decedent who was intermarried with Jehu Garrett and died in the life-time of said decedent,) and also Hannah intermarried with Anthony Baker, Adam B. Williamson, Azariah L. Williamson, Enos Williamson, Jun., Walter Williamson and Elizabeth Williamson, the said Hannah, Adam, Azariah, Sarah, Enos, Walter and Elizabeth being children of Sarah Williamson a daughter of the said decedent, who was intermarried with the said Enos Williamson, and died in the life-time of the said decedent; and that the said decedent died seized in fee of a certain plantation and tract, situate in the township of Newtown in the county aforesaid, bounded by lands of Eli Lewis and others, and containing one hundred and sixty acres more or less; and praying the court to award an inquest to make partition or valuation of the premises, &c.

This petition was held under advisement by the said court, from the 8th of May to the 24th of November following, when the following affidavit was presented on the part of Robert Lewis the appellant, in opposition to the prayer of the petition, and ordered by the said court to be filed.

" Delaware county, *ss.*

Robert Lewis being affirmed according to law, says that the aforesaid Azariah Lewis gave and devised the plantation and tract of land, in the said petition mentioned and described, to this affirmant; that the said affirmant is now seized and hath actual possession of said real estate under and by virtue of said devise, and that he holds and claims to hold and enjoy the same under and by virtue thereof.

ROBERT LEWIS."

Affirmed and subscribed before me, a
    Justice of the peace in and for said
    County, Nov. 24. 1835.
                ABRAHAM KERLIN."

On the same day an inquest was awarded, returnable the fourth Monday in Feb. 1836.

On the 9th of February, 1836, the writ of partition was executed, and was returned on the 22d of February following. The inquest

found that the property could not be parted and divided without prejudice to the whole; they therefore valued and appraised the same at a certain sum. On the same day the inquisition was confirmed *nisi*, and the following exceptions to the confirmation of the inquisition were filed.

" Exception 1st. The aforesaid real estate was devised to the exceptor by the last will and testament of Azariah Lewis, is now held by the exceptor under and by virtue of the said devise, and held by him adversely to the heirs at law of the said Azariah Lewis; is in his occupation and possession, and therefore not the subject of an inquest under the authority of the Orphans' Court.

Exception 2d. The said exceptor is the sole owner of the said real estate, and is in full and complete possession of the same.

Exception 3d. Neither Anthony Baker nor Hannah Baker, nor Caleb or Sarah West have any interest whatever in the said real estate."

Whereupon a rule was granted upon the petitioner, to show cause why the said inquisition and return should not be set aside; returnable on the fourth Monday in May following.

On the 22d of August 1836, after argument, the opinion of the Court was delivered by Judge DARLINGTON, as follows :—

" Upon the petition of Henry Pratt who intermarried with one of the lineal descendants of Azariah Lewis, deceased, to this Orphans' Court, setting forth that he died intestate, seized of certain real estate in the township of Newtown, a writ was awarded to the sheriff commanding him, that he should cause the said real estate to be parted and divided to and among the children and representatives of the said deceased, if such, &c. otherwise to value and appraise the same according to law: The sheriff has returned a valuation which is offered for confirmation. Robert Lewis, the only son of Azariah Lewis, has filed three exceptions, the last of which has not been pressed in the argument, and the two first are in substance, but one, viz.: that the real estate which is supposed to be the subject of these proceedings, is not held in common between him and the other parties named, but that he is the sole owner; it being devised to him by the last will and testament of Azariah Lewis, deceased.

The facts proved and conceded are, that Azariah Lewis died in the year 1831, seized of the real estate in question, leaving a paper writing purporting to be his last will and testament, wherein and whereby this real estate was devised to his son, Robert Lewis, in fee. Against the probate of this paper a caveat was entered in the office of the Register, a Register's Court called and an issue directed to the Court of Common Pleas to try the question, whether the

paper writing was or was not the last will and testament of Azariah Lewis, deceased. In November 1831 the issue came on to be tried and a verdict was rendered in favour of the plaintiff, but the judgment on the verdict was reversed for an erroneous direction of the Court to the jury upon the effect of certain evidence. The issue came on again to be tried in the month of August 1834, when a verdict was rendered for the defendant, *condemning* the paper in question as the last will and testament of Azariah Lewis, deceased; and the judgment on this verdict was affirmed upon a writ of error to the Supreme Court. So the matter as to the contested will yet rests. Robert Lewis however continues in possession of the real estate, and claims to hold it as his separate estate under this paper purporting to be a will.

The proceeding to obtain partition in the Orphans' Court among the heirs of a decedent has always in some degree resembled the bill for partition in Chancery; and the act of the 29th of March, 1832, entitled "An act relating to Orphans' Courts," seems to intend that the jurisdiction shall be somewhat enlarged, and the proceedings still more closely assimilated to those of a Court of Chancery. But no provision has ever been made by the legislature for the case which is not unfrequent in Chancery, of a party preferring his bill for partition, whose title to his alleged purpart is denied or disputed or enveloped in difficulty and doubt. In such a case a Court of Chancery would either dismiss the bill or hold it for a reasonable time, *until the plaintiff should make good* his title at law by ejectment; or perhaps in a case where the party filing the bill was in possession, would direct an issue to inquire into the legal title; and it would seem by analogy to this course, that an Orphans' Court should either stay proceedings or refuse to confirm them; as they did in the case of *Spangler* v. *Rambler*, (4 *Serg. & Rawle,* 192.) But it does not appear to us that even a Court of Chancery would withhold its proceeding to make partition for an indefinite length of time or until the right of the party should be irrevocably established at law. Ejectment is but a possessory action, although it is the usual method of trying titles to land; and neither one ejectment nor many (in England) will settle the title; unless the conduct of the party be such as to require him to be perpetually enjoined by a bill of peace; and in Pennsylvania by the act of the 13th of April 1807, not less than two concurring verdicts in ejectment, and judgments entered thereon, can bar the right to lands; yet it is presumed a Court of Chancery would not delay partition longer than to have the title once established at law, or require the question to be more than *once* fairly submitted to a jury; *Brown* v. *Brown,* (2 *Vern.* 232;) and according to the opinion of the Supreme Court in the case of *Spangler* v. *Rambler* above referred to, an Orphans' Court need not even wait for one ejectment, if upon a feigned issue a verdict has passed against the paper writing alleged to be a will.

(Lewis v. Pratt.)

If we were to direct an issue, as it is suggested, we may and ought, so as under the 55th section of the act relating to Orphans' Courts to ascertain the fact, whether Azariah Lewis died intestate or not, and consequently whether the present plaintiff or petitioner was entitled to the undivided share which he claims to have laid off to him, or which is the same thing, whether the paper in question is or is not his last will and testament, would not the former issue directed and found against the validity of that paper and judgment rendered upon the verdict be conclusive? If so, such a proceeding would be useless.

If we were to put the petitioner to his action at law, the termination of one ejectment in his favour would still leave the title doubtful and the question of will or no will as to real estate in a state of uncertainty, which could not be settled until a second or perhaps a third ejectment should be tried; and it is not contended that an Orphans' Court should, more than a Court of Chancery, wait so long, but should proceed under the 36th section of the act on the application of any lineal descendant.

Upon the whole we think the view taken by the Supreme Court in the case before referred to, (*Spangler* v. *Rambler*,) an unobjectionable one as applied to our laws relating to Orphans' Courts; although we do not fully appreciate the force of all the reasoning of the late learned chief justice. It appears they took or rather recommended a course *somewhat analogous* to that which would have been required by a Court of Chancery, and instead of sending a party to law to establish his title by a *single ejectment,* they would content themselves with the decision of the court and jury upon an issue of *devisavit vel non.* The Chief Justice says, "if an issue had been sent from the Register's Court and the writing exhibited as the will of Michael Rambler been determined to be no will, it would have been the duty of the Register's Court to have taken for granted that Rambler died intestate, and the Orphans' Court ought to have proceeded to a partition of his lands." In this case such an issue was sent, and a verdict and judgment had against the paper now set up as a will.

Rule discharged, and Inquisition confirmed."

On the 11th of November 1836, Robert Lewis appealed from the decree of the Orphans' Court.

In this Court the following exceptions were filed:—

" 1. The said real estate is held, occupied and possessed by Robert Lewis, the aforesaid appellant, solely and in his own right as devisee of the said Azariah Lewis, deceased, and adversely to the claim of the said petitioner and appellee; and is therefore not subject to partition under the authority of the Orphans' Court.

2. The Court erred in discharging the appellant's rule to show

cause why the return to the writ of partition should not be set aside, and confirming the said inquisition.

3. The Orphans' Court had no jurisdiction of the matter."

Mr. *Lewis*, for the appellant.

The three exceptions raise but one question, and that is, whether the Orphans' Court has any authority to proceed to a partition of land, where the title set forth in the petition is denied, the claim resisted, and possession held adversely and under another title.

Partition, in its primitive sense, signified a division by coparceners or co-heirs of lands which had decended to them. *Allnatt on Partition*, p. 1. *Booth on Real Actions*, 244. If the parties stood not in the relation of co-heirs, they could not by the common law compel partition. The writ devised for the purpose of enforcing division set forth, that the parties held "*together and undivided*," so many acres of land, &c., and was applicable only where there was such holding together. The preamble of the several statutes passed to extend the remedy, shows its nature and object. *Rob. Dig.* 217, 224. It is a proceeding *in rem*, for the purpose of giving to the tenants their respective severalties, and has reference rather to the corporeal permanent tangible subject, than to the *status* or interest of the owner ; it is to divide lands and tenements amongst those who hold by unity of possession at least : let that unity be destroyed, and there is nothing upon which the remedy can operate. The title, indeed, is a legitimate object of inquiry in partition, only as it affects the possession. The title, the right, or the interest, is not the subject of division, but only the land, house, castle, or other object of a permanent nature, of which there is a common possession, a holding in fact together. If partition were any thing else than division, it would be partition no longer.

The nature and character of the proceeding has not been in any way essentially changed by our acts of assembly, but it remains the same in every distinguishing property, as in the English common law courts. In the Common Pleas, it is applicable to cases of joint tenancy and tenancy in common ; but in the Orphans' Court, like the writ *de familia hersiscunda* of the Roman law, it applies to parceners only, holding, as they do under our intestate laws, as tenants in common. The writ of inquest is a writ *de partitione facienda*, both in form and effect; it commands the sheriff to go with his jury upon the lands described in the writ, and to divide them among the persons named as heirs and representatives of the decedent; and it differs from the common law writ only in not requiring a division when the property would be prejudiced by it and directing a valuation. The estate comes within the jurisdiction of the Orphans' Court by virtue of the intestacy of the ancestor, under whom the

parties entitled to partition claim as coparceners, and is subject to division among them in that relation.

So long as that relation is maintained, the seisin of one is the seisin of all, and the possession of one is *constructively* the possession of all. But in case of ouster by one co-heir of the others, the relation which subsisted between them is destroyed, and that constructive possession ceases to exist; they then no longer hold together, and they have nothing in common of which the party ousted can demand division. The rights of a person in possession cannot be disregarded, whether he is in rightfully or wrongfully, nor can he be dispossessed without being afforded an opportunity of asserting his title.

In the case before the court, it is admitted, that Robert Lewis holds adversely to the appellee under a title which he is ready to' maintain. The facts are sufficient to constitute an ouster, (*Fisher* v. *Taylor*, *Cowper*, 217), and that ouster takes the case out of the jurisdiction of the Orphans' Court; the appellant is now sole seised, and the appellee is, if you please, disseised. There is not one foot of the land, constituting the subject of the present litigation, that he can call his own, or exercise any acts of ownership over, without being guilty of a trespass. There is a right interposed between him and his alleged heirship, which must be overcome, before he can come into the Orphans' Court; he must first vindicate his claim to the character he assumes, by a recovery in ejectment, by disproving the testacy of Azariah Lewis, of whom he declares himself a representative. To allow him the perogatives of a co-heir, and to issue a writ of inquest of partition on his application, is to attempt to confer upon him a relation which does not belong to him, and involves a denial of the right of the appellant without even a hearing.

The proposition that the ouster of one coparcener by another, destroys the relation between them as to the subject of the ouster, and renders the writ of partition inappropriate for any purpose, seems to be so self-evident upon principle, as to make it a matter of surprise that it should ever be doubted; yet, there is authority upon the point if it be needed. "If one coparcener," says Lord COKE, "disseise another; during this disseisin a writ of partition does not lie between them, because they do not hold together and undivided." *Co. Litt.* 167, *a.* *Clapp* v. *Bromagham,.* (9 *Cowen*, 530,) is to the same effect.

In equity, a commission to make partition will not be granted, where the defendant denies the plaintiff's right; but the chancellor will send him to law to make out his title. *Allnatt on Partition*, 100, 101. 4 *Kent's Com.* 364-5. *Wilkin* v. *Wilkin*, (1 *John. Ch.* 111.) 4 *Randolph*, 493. He also referred to *Martin* v. *Martin*, (17 *Serg. & Rawle*, 433, 4, 5,) and *Galbraith* v. *Green*, (13 *Serg. & Rawle,* 93.)

He referred to the case of *Spangler* v. *Rambler,.* (4 *Serg. & Rawle,.* 192,) as having been cited by the appellee, in the argument below, and endeavoured to show several marks of distinction between that

case and the one before the court. He said, that the point of that case was, that the court would not compel partition while the question of will or no will was undecided, and contended that all that is there said, as to when the court ought to proceed to partition, is extra-judicial. Besides, it might be remarked, that at the time this *dictum* was pronounced, the understanding of the profession as to the law relative to the effect of decrees of the Orphans' Court, was different from what it is now. Such decrees were *then* held to be inquirable into ; *now,* they are conclusive upon all matters within the jurisdiction of the court. The case of *Snyder* v. *Snyder,* (4 *Binn.* 483,) had been decided four year before ; that of *Huckel* v. *Phillips,* (2 *Serg. & Rawle,*) in 1815, and *Kohr* v. *Fedderhoff,* was decided at the same term with *Spangler* v. *Rambler.* *M'Pherson* v. *Canliff,* was six years later, and even after that decision, an act of assembly was considered necessary, to put the question as to the conclusiveness of such decrees, entirely at rest.

The same act that declares the Orphans' Court a court of record, with all the qualities and incidents of a court of record at common law, and that its proceedings and decrees in all matters within its jurisdiction, shall not be reversed or avoided collaterally, in any other court, also provides that the partition made by the Orphans' Court shall be *"firm and stable forever ;"* and in case of valuation and an acceptance by one of the heirs and payment to the rest, that they shall be *"forever barred of all right or title to the land."*

The appellant, therefore, being made a party to these proceedings, though against his will, the decree will be binding upon him and his heirs, and conclusive as to the title ; and should the appellee take the property at the valuation, and tender to the appellant his share of the valuation money, he might recover in ejectment upon the basis of these proceedings, the will to the contrary notwithstanding. If then, a judgment on an issue of *devisavit vel non,* authorise the Orphans' Court to proceed to partition, and to decree, that "the same be firm and stable forever," such a judgment is conclusive as to the real estate, and is equivalent to two concurring judgments in ejectment : an effect, which I hazard nothing in saying, C. J. Tilghman, had not the remotest intention of ascribing to it in *Spangler* v. *Rambler,* and which cannot be imputed to it, without overruling the late case of *Smith and Bonsall,* and judicially legislating into existence a rule of law, as yet unheard of in Pennsylvania.

The provisions by our acts of assembly for partition by the Orphans' Court, are not applicable to cases of adverse possession, nor were they designed by the legislature, as a means for deciding a question of title. The very state of circumstances which they assume as a ground for commencement, is here denied, to wit, the intestacy of the person of whom the petitioner claims to be a representative, and the tenancy in common of the parties named in the petition. The intestacy remains to be proved, and though it were

(Lewis v. Pratt.)

proved, the tenancy in common does not exist, as long as the ouster continues; the petitioner must have these two points established in his favour, before the Orphans' Court can proceed. Where there is a possession adverse to the alleged heirs, the very first step of the proceeding involves a violation of civil right. By the writ of inquest the sheriff is required to go upon the land, and, if possible, to divide it among the parties named in the writ. With what propriety can the Orphans' Court command him to do this, at the suggestion of a party who cannot himself put his foot on the same land, without being liable as a trespasser? Is not a man's house his castle, his close, his domain, and as such protected by the law from the invasion of strangers? Our possessory rights are but nominal, if liable to be thus interfered with.

If this case were in the Common Pleas instead of the Orphans' Court, the appellant as defendant would be entitled to be heard upon his plea of *non tenet insimul;* and that plea would be sustained by proof of his adverse possession, involving a destruction of the only unity on which the right of partition depends; the plaintiff could not show, by way of rebutting the force of such proof, his *right* of possession; nor would the verdict and judgment on the issue of *devisavit vel non,* be evidence. Ejectment would be the proper action to enforce that right; and he must resort to it before he can claim partition. Though the form of proceeding in the Orphans' Court is different, the substance is the same, and we are entitled to the benefit of the plea, that we do not hold together with the appellee, and to the advantage of the evidence which we have adduced to sustain it, as much as though the writ had issued from another court.

Mr. *Kittera, contra.*—There was no actual ouster in this case. It is settled, that ouster will not be presumed from declarations of parties. In fact, there was no evidence against the possession of the petitioners. In chancery, in proceedings in partition, there must be a disseisin to bar the petitioner. *Wilkins* v. *Wilkins,* (1 *Johns. Ch. Rep.* 111.) 4 *Kent's Com.* 365, 3d edition. The act of 1794 does not seem to require that the parties should be in actual possession. *Spangler* v. *Rambler,* (4 *Serg. & Rawle,* 192.) The decree of the Register's Court was conclusive upon the appellant. It is settled by a long train of authorities, that such decree can only be controverted in *ejectment.* It must be considered as binding upon the Orphans' Court.

Mr. *Sergeant,* in reply.

The appellant is in possession, and could not bring ejectment. There is a difference between the action of partition in the common law courts and the proceedings in chancery for that purpose. In the former, it is the *judgment* that makes the partition. Chancery

(Lewis *v.* Pratt.)

decrees conveyance, and can impose terms. The proceedings in the Orphans' Court resemble those at Common Law in this respect. By resorting to this method of partition, the petitioner would deprive the appellant of his right of trial by jury, upon the question of the validity of the will. It is an elementary rule, that a person in actual peaceable possession, cannot be turned out of it without legal process in ejectment after an opportunity of being heard on the question of ownership. Was Lewis in possession? There was actual adverse possession, by one claiming to be the sole owner. But, it is said there was a constructive possession, upon the death of the testator, in all who were entitled under the intestate law. *That* (if there could be a constructive where there was an actual adverse possession) would depend upon the question, whether the father died testate or intestate; it would follow the right, and the right would depend upon whether there was or was not a valid devise. If the former, then the appellant was in possession. Upon this question, he has a right to be heard. The decision of the Orphans' Court was that the appellant could not be heard at all. Actual ouster is not necessary. Possession, with denial of title, is sufficient. This court may either stay proceedings until the party out of possession shall bring ejectment, or may direct an issue. The former is the better course.

The opinion of the court was delivered by

KENNEDY, J.—It is admitted that Azariah Lewis died seised of the land in question; but whether he died intestate as to it or not, is a matter of fact about which the parties are at issue: and certainly it is a question which ought to have been settled and known how it was, by the Orphans' Court, before it proceeded to decree a partition of the land. For if A. Lewis died after having disposed of the land by a will, duly executed by him, he could not therefore be said to have died intestate as to it, whatever he might have done as to other lands of which he was seised at the time of his death. And unless he did die intestate as to it, the Orphans' Court had no jurisdiction over it, so as to entertain a petition for partition thereof among the heirs of A. Lewis; and to proceed therein as directed by the act of 1794, to make a decree to that effect.

Robert Lewis, the appellant here, appeared in the Orphans' Court below, after the petition praying the partition was presented; and made known to the Court by his affidavit, which was filed with the clerk of the Court, that he claimed the whole of the land exclusively, under a devise made of the same to him by Azariah Lewis; that he was in the actual possession thereof, and held and claimed it exclusively under the devise; and therefore objected to the Court's proceeding to make a partition or valuation thereof, as in cases of intestacy. This objection, if true, was certainly an insuperable one

(Lewis v. Pratt.)

to the Court's making or causing to be made, a partition of the land. We therefore think, that the Orphans' Court ought, before it proceeded any further in the matter, to have had the truth or falsity of the objection ascertained, by means of a jury, under the advice and direction of a proper tribunal. This should have been done, by making an order for the trial of a feigned issue, in the Common Pleas of the county, to determine the validity of the will; or for the bringing of an ejectment by the petitioner, and those claiming as heirs of the deceased, against the appellant claiming as devisee, (seeing they were out of the possession of the land, and he was in exclusive possession thereof;) in order to test the validity of the writing set up by him as a will, and at the same time, if he failed to do so, to enable them to recover and obtain possession of the land in common with him. And indeed as the appellant has the sole and exclusive possession of the land, and denies that those claiming to have partition made of it, have any title or claim thereto whatever, this latter order would, as it appears to me, have been the most appropriate; because it would, in case the appellant failed to establish his right as devisee, have put the petitioner, and those joined with him in claiming title to the land by descent, in the possession of it with the appellant; so that they would then be all holding it together, and the disseisin of them by the appellant be removed, which has also been made an objection here; and it has been argued that as long as they do not all hold together, no partition can be made, or decreed by the Orphans' Court. But in answer to all this, it is contended that the verdict and judgment on the feigned issue, directed by the Register's Court, when a caveat was entered against a probate of the writing as a will, under which the appellant claims, settled the question of Azariah Lewis' dying intestate, in favour of his heirs at law: and it would seem that the Orphans' Court so considered it; and therefore proceeded to make a final decree, according to the prayer of the petitioner, disregarding the objection of the appellants. That the decision on the feigned issue did determine finally and conclusively, the intestacy of Azariah Lewis, as to his personal estate, must be admitted; but certainly not as to his real. The writing cannot properly be considered as having been offered for probate before the register, with a view to settle the title or rights under it, as to the real estate of the deceased; nor yet for the purpose of having any action in relation thereto. It was done merely for the purpose of settling and determining the rights of those concerned in the personal estate. It would seem to be hard, therefore, to make such a decision binding and conclusive, upon those asserting rights under the writing as a will, without any previous notice that the decision should be so considered thereafter, in any subsequent proceeding to be had or instituted in regard to the real estate. As well might it be so held in case of a subsequent ejectment brought by the heirs disinherited by the writing, as in a

subsequent proceeding, like the present, for having partition of the land devised: but in the case ·of an ejectment being so brought against the appellant it is admitted, and indeed too well settled to be controverted, that the decision had on the issue *devisavit vel non,* which was against the writing's being the will of A. Lewis, would not have been conclusive upon the appellant. And it may be added also, that it would have placed him in no worse situation than he would have stood in, if it had never been presented for probate, and there had been no such decision upon it. For in either case, before he could prevail, he would have to adduce evidence, and to prove, at least, by two witnesses, to the conviction of the jury, that it was the last will of A. Lewis. It is also certain, that one decision against him in an ejectment brought for the land, without any previous order of the Orphans' Court, directing it to be instituted for the purpose ·of testing the validity of the writing as a will, and as preparatory to having a partition made of the land, by the decree of the Orphans' Court, would not be conclusive upon him: for he would have a right to bring an ejectment against the recoverers in the first suit, and to try the question of will or no will again. Then why should the trial and judgment upon the issue *devisavit vel non,* which had no relation to the land, but was had for the purpose of settling the question of testacy or intestacy, as to the personal estate of the deceased merely, be held by the Orphans' Court, to be conclusive upon the appellant in a proceeding commenced against him therein, to have partition made of the land, as in case of intestacy? It would be unjust, if it were for no other reason than this, that it would not be reciprocal in its effect, and equally binding and conclusive in all cases on both parties; for in case of the will's being established upon the trial of such feigned issue, in favour of the devisee, he could make no application to the Orphans' Court, for any decree or order that would confirm his title under the devise to the land, upon the faith and credit of such decision, and preclude all future claim of the heirs at law to it; so that they, notwithstanding the decision was against them upon the feigned issue, could afterwards at any time, before twenty-one years adverse possession should become a bar to their claim to the land, proceed against the devisee by ejectment, and recover the land or their proportion of it, as the heirs of the deceased, unless he satisfied a second jury, by the production of a superior weight of evidence, of the validity of the will. But if the decision as here, were to be against him, then to permit the heirs at law, as such, claiming the land, to apply immediately thereafter, to the Orphans' Court, and upon the faith of the decision to obtain a decree making partition thereof, without affording a further opportunity to the devisee, by means of a jury, to establish his right under the will to the land, would be giving to those claiming as heirs, a very unequal advantage over the party claiming as devisee.

(Lewis *v.* Pratt.)

We therefore think it right, as well as reasonable and just, that the decision had upon a feigned issue, by the order of the Register's Court, for the purpose of proving or setting aside the writing exhibited as a will, in order to settle and adjust the rights of those claiming the personal estate of the deceased, should not be regarded, or considered by the Orphans' Court afterwards, upon an application for a partition of the real estate, if objected to, as settling the question of testacy or intestacy, as to it. But in order to determine this question, so that the Orphans' Court may either proceed to make the partition, or to dismiss the petition presented for that purpose, as soon as the question shall be decided the one way or the other, it is necessary that the Orphans' Court should direct an issue to be formed, or a suit to be brought in the Common Pleas, and there to be tried by a jury, under the advice and direction of that Court, so as to have it finally settled, whether the deceased died intestate as to the land in question, or not. This will not only afford to each party, an equal chance of having justice done, but, being previously apprised of the conclusive effects that the decision upon such issue is to have, (if a partition made by the decree of the Orphans' Court, is ' to *be and remain firm* and stable forever,' according to the words of the intestate law,) each will be induced, therefore, to bring forward all the testimony within his power, that will be favourable to him, so that on the trial, he may put forth his whole strength, in order to obtain the victory.

The inquisition and decree of the Orphans' Court thereon, are reversed and annulled; and the cause with the record thereof, remanded to the Orphans' Court, with direction to make an order, that the petitioner and those uniting with him to have partition made of the land, shall first commence and prosecute an action of ejectment therefor, against the appellant, for the purpose of establishing their right by descent to the land, as the heirs of A. Lewis; and again, if they have such right, to recover the possession thereof: And during the interim, until the action of ejectment shall be prosecuted to final judgment, all further proceeding in this case, to be stayed.

                                      Decree accordingly.