# Shoenberger's Executors *versus* The Lancaster Savings Institution.

A notice of the dishonour of a note, endorsed by the testator, given to one named as executor in the will, who had not joined in the probate or qualified as executor, but who had not renounced at the time of the notice, and who did not refuse the notice, is sufficient to charge the estate.

The law treats executors appointed in a will, as entitled to the office until they renounce it, if they are not legally incompetent to fill it.

If competent, their appointment avails to make them the representatives of the estate so far as relates to acts in which they are merely *passive*, before they have qualified themselves for the active duties of the trust.

The appointment of executors is only provisional, and requires the approval of the law before it is complete; and hence the title to the office is derived rather from the law than the will. Per LOWRIE, J.

ERROR to the Common Pleas of *Lancaster county*.

The following statement of facts is submitted as a case stated for the consideration and decision of the court.

Edward H. Lytle made the several promissory notes in writing hereinafter mentioned, of which the following are copies:—

[Shoenberger's Executors *v.* Lancaster Savings Institution.]

No. 1.

Philadelphia, March 1st, 1854.

$1950.00. .

Four months after date, I promise to pay to the order of Dr. P. Shoenberger, nineteen hundred and fifty dollars, without defalcation, value received. Payable at the Farmers' Bank of Lancaster.

EDWARD H. LYTLE.

No. ——. Due July 1–4.

Endorsed—P. SHOENBERGER.

This note was protested for non-payment on the 4th day of July, 1854, and notice of protest addressed severally to Edward H. Lytle, Hollidaysburg; Edwin Shoenberger, Marietta; and John Shoenberger, Pittsburgh.

No. 2.

Hollidaysburg, June 1st, 1854.

$1750.00.

Five months after date, I promise to pay to the order of Dr. P. Shoenberger, seventeen hundred and fifty dollars, without defalcation, value received. Payable at Lancaster Savings Institution.

EDWARD H. LYTLE.

No. ——. Due Nov. 1–4.

Endorsed—P. SHOENBERGER.

No. 3.

Hollidaysburg, June 4th, 1854.

$2250.00.

Five months after date, I promise to pay to the order of Dr. P. Shoenberger, twenty-two hundred and fifty dollars, without defalcation, value received. Payable at Lancaster Savings Institution.

EDWARD H. LYTLE.

No. ——. Due Nov. 4–7.

Endorsed—P. SHOENBERGER.

No. 4.

Hollidaysburg, June 1st, 1854.

$2250.00.

Six months after date, I promise to pay to the order of Dr. P. Shoenberger, twenty-two hundred and fifty dollars, without defalcation, value received. Payable at Lancaster Savings Institution.

EDWARD H. LYTLE.

No. ——. Due Dec. 1–4.

Endorsed—P. SHOENBERGER.

These latter named three notes were respectively protested on the 4th and 7th days of November, and the 4th day of December, 1854, as they respectively matured—and notice of protest in each

instance addressed to Henry M. Watts, Philadelphia (Pro ut notes and protests forming part of this case stated).

Two other notes drawn by Edward H. Lytle and endorsed by Dr. P. Shoenberger, dated March 1, 1854, at five months, the one for $1500 and the other for $2100, payable at the Farmers' Bank of Lancaster, were also owned by the Lancaster Savings Institution, and protested for non-payment August 4, 1854, and notice of protest addressed to Michael Berry, Blair county, and to J. G. Miles, Esq., Huntingdon.

These two notes were paid by John G. Miles, one of the executors of Dr. P. Shoenberger, deceased, on the 26th day of May, 1855, to the Lancaster Savings Institution, and lifted by him.

Peter Shoenberger, the endorser of the foregoing described notes, died on the 18th June, 1854, his residence being then in the city of Philadelphia, where his will was proved on the 1st July, 1854, before the register of Philadelphia county, and letters testamentary were issued on that day, and bearing that date, to Sarah K. Shoenberger, John G. Miles, and Michael Berry, three of the executors named in his said will and the codicils thereto annexed, they alone having proved said will and codicils. George K. Shoenberger, John H. Shoenberger, and Henry M. Watts were also named as executors in said will; but they did not join in proving the will, no letters testamentary were ever issued to them or either of them, and they never acted in the executorship, but, severally, subsequently renounced the same; but no renunciation had taken place at the time of the commencement of this suit.

Due notice was published in the Daily News, of the city of Philadelphia, to all persons interested in the estate of the testator, that letters testamentary upon his will had been granted to the said Sarah K. Shoenberger, John G. Miles, and Michael Berry.

It is admitted that Dr. Shoenberger's residence at Philadelphia was in the house of his son-in-law, Henry M. Watts; that a short time previous to his death he left Philadelphia to visit his son, Edwin Shoenberger, at Marietta, Lancaster county, where he died.

At the respective dates of the protests of the hereinbefore described notes, the residence of John G. Miles was, and still is, Huntingdon, Huntingdon county, Pennsylvania, and the residence of Michael Berry was, and still is, Duncansville, three miles from Hollidaysburg, Pennsylvania. Mrs. Sarah K. Shoenberger had no fixed residence, and has since been discharged, upon her own petition, from the executorship. The said will, probate, and letters testamentary are made part of this case stated, pro ut the same.

The questions for the judgment of the court are, whether the estate of the testator, the said Peter Shoenberger, is liable for any of the foregoing described unpaid notes, under the facts hereinbefore stated—and if so, for which and how many of them. If,

upon the foregoing statement of facts, the said estate is liable for the first hereinbefore described note, for the payment of $1950—but not for the payment of the other remaining above described unpaid notes—then judgment to be rendered for the said sum of $1950, with interest from the 4th July, 1854.

But if upon the foregoing stated facts, the estate aforesaid is liable for the whole of the said notes, then judgment to be rendered for the aggregate principal of the said notes, with interest on their respective amounts from the dates of their respective maturities, or for such as it is liable for.

But if upon the said facts the said estate is not liable for any of the said notes, then judgment to be rendered in favour of the defendants.

Either party to be at liberty to take a writ of error.

The court below (HAYES, J.) delivered the following opinion, and rendered judgment on the case stated in favour of the plaintiff for the amount of the notes sued on:—

"The question presented is, whether the estate of the said Peter Shoenberger is liable for any of the above described unpaid notes; and, if so, for which and how many.

"This question depends upon the sufficiency of the notice. The first note matured on the 4th July, 1854, and the notice was addressed in due time to Edwin Shoenberger, a son of P. Shoenberger, at whose house, in Marietta, he had died on the previous 18th of June, and to John H. Shoenberger, another son, in Pittsburgh, who was named as an executor in his will. The three other notes as they respectively matured were protested, and notice of their non-payment was in due time addressed to Henry M. Watts of Philadelphia, at whose house the endorser resided at the time of his death, and who was also named as executor in the will.

"Is notice to one of several executors sufficient? Was notice to one executor sufficient here, where six were named, and the will was proved by three of the others named, and letters testamentary granted to them alone? Is notice to such a person sufficient, when he neither joined in proving the will nor in doing any act as executor?

"With respect to the acts requisite to fix the responsibility of an endorser, true policy is said to consist in establishing some broad, plain rules, easy to be understood and steady in their obligation: 3 *Kent's Com.* 104–7.

"The holder must give *reasonable notice* to the endorser of a note to entitle himself to a suit against him; the object is to afford the endorser an opportunity to obtain security from those to whom he is entitled to resort for indemnity: 3 *Kent's Com.* 105.

"Notice to one of several partners or one of several joint drawers or endorsers, is notice to them all.

"Reasonable diligence and attention are all that the law exacts:

it does not require excessive diligence.   It has been determined, that if the demand be made on Saturday, it is sufficient to give notice to the drawer on Monday: so putting the notice in the post office is sufficient, though the letter should happen to miscarry; so, if the holder use the ordinary mode of conveyance, he is not required to see that the notice is brought home to the party.   Nor is it *necessary* to send by the public mail: 3 *Kent's Com.* 107, 108, 109. The notice in all cases is good, if left at the dwelling-house of the party in a way reasonably calculated to bring the knowledge home to him; and if the house be shut up by temporary absence, still the notice may be left there: *Chitty on B.* 242.   So if the party be abroad at the time of the dishonour, and he has a residence in England, it has been decided that it will be sufficient to leave notice of non-acceptance at that place, and a demand of acceptance or payment from his wife or servant, would, in such case, be regular.

"But it has been held that even the death of the acceptor of a bill or maker of a note, however notorious, will not excuse the neglect to make due presentment: in such case it should be made to his personal representative; or if there be no executor or administrator, then at the house of the deceased.

"These rules, and other similar ones that might be quoted, are apparently adapted to the policy before mentioned, the object of which would seem to be to preserve the utility of negotiable instruments, by requiring in the transaction of business, through their instrumentality, nothing that prudent and honest men may not, and ought not to perform.

"An endorser dying and leaving a will, naming executors, there can be no doubt the notice of protest for non-payment should be addressed to his executors: *Chitty on B.* 242.   Nor is it necessary, in order to legalize such notice, that there should be a probate of the will at the time: no principle is clearer, than that executors derive their authority, not from the probate, but from the will: *Office of Ex'rs.* 33; *Plowd.* 277; 5 *Co.* 78.   It is equally well settled, that a probate by one or more executors, enures to all the co-executors, so as to entitle them all to sue: *Chitty on B.* 244. Even if some of the co-executors renounce, and the rest prove the will, yet those who renounce may, at common law, come in at any time afterwards and administer, having the right in them; for at the instant of the testator's death, the interest in all his personal property vests in his executors, and it can be divested only by operation of law or some act of their own; it is assets in their hands for the payment of the testator's debts and legacies; representing the testator as to his personal estate, he has the same interest in the thing, however inconsiderable in value, as the testator had—as if the testator had dogs, ferrets, &c., they belong to the executors:

[Shoenberger's Executors *v.* Lancaster Savings Institution.]

4 *Bac. Ab.* (F. 14) 41, 42; 3 *Bac. Ab.* (H. 1) 57; 8 *Barr* 420; 1 *W. & S.* 398; *Office of Ex'rs.* 52, 57.

"The question as to the sufficiency of the notice is, in other words, Was it, under the circumstances, a reasonable notice?

"First, as to the first note, which matured on the 4th of July, the endorser having died on the preceding 18th of June. The holder of the note was in Lancaster county. P. Shoenberger died at the house of one of his sons in this county. He was not a housekeeper himself, but resided with a son-in-law in Philadelphia. The notice was addressed to the son at whose house he died, and also to another son, John H. Shoenberger, at Pittsburgh, who was one of the executors named in the will. This, in the opinion of the court, was reasonable diligence; and the notice to John H. Shoenberger was reasonable and sufficient notice. The fact of his not having joined in the probate of the will, or his afterwards renouncing, is immaterial.

"We are also of opinion that the notice, in relation to the last three notes, was reasonable and sufficient, being addressed to Henry M. Watts, at whose house P. Shoenberger resided at the time of his death, and who was also an executor named in his will. John H. Shoenberger and Henry M. Watts were both executors at the time of these respective notices, to every legal intent, in regard to the validity of the notices, though they did not unite with other executors therein named, in proving the will, and, subsequently to the bringing of this suit, renounced. They were each as competent, and liable to be affected with notice of the protest and non-payment of the notes in question, as the legal representatives of P. Shoenberger, the endorser, as any of the other or all the executors named in his will; notice to one of several co-executors being notice to all: 5 *Co.* 28; 9 *Id.* 36; *Moore* 373; *Dyer* 180; 3 *P. Wm.* 251; 3 *Burr.* 1463.

"Judgment is therefore rendered for the aggregate principal of the said four notes, with interest on their respective amounts from the time they respectively matured."

The defendants purchased this writ, and specified that "the court erred in entering judgment for plaintiff instead of for defendants."

*Franklin*, for plaintiff in error.—Is a protest regular when the last day of grace falls on the 4th of July, and the demand and protest is on that day? In New York state it is held that the demand and protest must be on the 3d: Lewis *v.* Burr, 2 *Caine's Cases* 195; Cuyler *v.* Stevens, 4 *Wend.* 566; 3 *Kent's Com.* 102.

2. In case of the death of the endorser, notice must be given to the executor or administrators: Merchants' Bank *v.* Birch, 17 *John.* 25; Oriental Bank *v.* Blake, 22 *Pick.* 206; *Chitty on Bills* 449, n. 1; *Id.* 496; Cayuga County Bank *v.* Bennet, 5 *Hill* 236;

[Shoenberger's Executors v. Lancaster Savings Institution.]

Juniata Bank v. Hale, 16 *S. & R.* 157. Notice to one of several executors is sufficient: *Chitty on Bills* 449. The will had been proved, and Henry M. Watts and John H. Shoenberger had not joined in the probate or qualified as executors. The executors who prove the will are the actual representatives; those who do not join have no authority to meddle with the estate: 1 *Wm. on Ex.* 236; Rawlinson v. Shaw, 3 *T. R.* 557; *Sto. on Prom. Notes,* § 253. The demand should be made upon an executor qualified to act; and the same rule should apply to notice. The holder can always readily obtain this information at the register's office.

·The grant of letters is a judicial act, and its regularity cannot be inquired into collaterally: Loy v. Kennedy, 1 *W. & S.* 398; Thompson v. Thompson, 9 *Barr* 234; *Act 15th March,* 1832, § 14; *Act 24th February,* 1834, § 14.

*Stevens* and *Lightner,* for defendant in error.—Was the notice given sufficient to charge the estate ? The personal representatives, however many, are but a single person in law, and notice to one is notice to all: Wheeler v. Wheeler, 9 *Cow.* 34; 4 *Bac. Abr.* 41-2; 1 *P. Wms.* 786. An executor is created by the will and not by the probate, and the personal property vests in the executors the instant testator dies: 1 *McCord* 132; Leabrooks v. Williams, 3 *Id.* 371. Probate of the will is but the evidence of executorship; the power is derived from the will: 1 *T. R.* 48. An executor omitting to join in the probate, must still be joined in an action: Thompson v. Reynolds, 3 *C. & P.* 123; 1 *P. Wms.* 768; Scott v. Briant, 6 *N. & M.* 381; Wankford v. Wankford, 1 *Salk.*; 4 *Bac. Ab.* tit. *Ex'rs.* p. 41-2; Bodle v. Bodle, 5 *Wend.* 313; *Hill on Trus.* 298-420; *Hood on Ex'rs.* 34-5.

An executor remains so until actual renunciation and discharge by the court. The probate enures to all, and he may come in any time: 3 *B. & A.* 300; Creswick v. Woodhead, 4 *M. & G.* 811; *Toller on Ex'rs.* 68-9; 8 *Barr* 420; Ex parte Taggart, 1 ·*Ash.* 321. The renunciation must be evidenced by some act of record: 1 *Wms. Ex'rs.* p. B. 3, ch. 6; 4 *M. & G.* 811 (in note.)

Thus it appears that the executor is created by the will and not by the probate, and his rights and responsibilities arise at the instant of testator's death, and he continues to be an executor although he has not joined in the probate, until by some formal act of renunciation, duly recorded in the proper office, he shall have been discharged from the trust.

Our Act of 11th April, 1848, § 3, *P. L.* 539, authorizes the holder to make presentment on the 4th or on the day preceding.

The opinion of the court was delivered by

LOWRIE, J.—The office of executor in Pennsylvania is, of course, very analogous to the office of executor in England, but their

duties are not identical; and we always run the risk of error, if we take counsel from English analogies and overlook the instructions of our own statutes. At death a man's estate really passes into the hands of the law for administration, as much when he dies testate as when intestate; except that, in the former case, he fixes the law of its distribution after payment of debts, and usually appoints the persons who are to execute his will. But even this appointment is only provisional, and requires to be approved by the law before it is complete; and therefore the title to the office of executor is derived rather from the law than from the will.

The law, however, allows a man to appoint his executors subject to this approval, and treats them, when appointed, as entitled to the office until they renounce it, if they are not legally incompetent to fill it. If they are competent, their appointment avails to make them representatives of the estate so far as relates to acts in which they are merely passive, such as receiving notice of the dishonour of a note; for they have immediate power to qualify themselves to act if they choose, and if the occasion demands it.

When the notices in this case were served, the two persons named as executors and to whom notice was given, had power to take the oath and the office of executors, and might have done so the next hour afterwards. The law allowed the testator to appoint them, and he did so, and they may be treated as representing his estate for the purpose of such notice, unless they renounce at the register's office, or at least until they refuse the notice on the ground that they do not intend to serve. He who is bound to give such notice, is not in fault in giving it to one who is thus potentially an executor, even though others have already become so actually by taking the oath of office, unless at least he is warned that such notice is not accepted. If the estate suffers from such a notice, it is not the fault of him that gave it.

It was not erroneous to give the notice on the 4th of July, for a statute expressly allows this.

Judgment affirmed.