## Bowman's Appeal.   Sponsler's Estate.

1. The will appointing an executor gives him a right to administer, of which he can be deprived only by his renunciation or refusal to appear when cited to prove the will.

2. The executor may elect to accept before probate, by doing such acts as amount to administration.

3. Whatever would make a man liable as executor *de son tort*, will be deemed an election of the executorship.

4. Renunciation must be evidenced by some act entered or recorded.

5. Taking the oath is the final and conclusive act; when taken, the executor has elected, and cannot divest himself of the office, but may be compelled to perform it.

6. An executor after proving the will and being qualified, died before he received letters; he had in his possession chattels belonging to the decedent. The administrator of the executor was bound to account for these chattels in settlement of the account of the executor.

7. The administrator d. b. n. of the testator could not maintain replevin, &c., against the representative of the executor for the chattels of the testator in the executor's hands.

May 11th 1869.   Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Appeal from the decree of the Orphans' Court of *Cumberland county*, in the estate of C. W. Sponsler, deceased: No. 107, to May Term 1869.

The facts found by J. D. Adair, Esq., the auditor, were substantially as follows:—

The decedent died in December 1866, having made his will, of which he appointed H. G. Rupp the executor. On the 19th of December, shortly after Sponsler's death, Rupp, who resided at Mechanicsburg, brought the will to the register's office at Carlisle, had it proved, and was qualified as executor. The register was not able to prepare the letters testamentary at that time, but promised Rupp that he would bring them to his residence in a few days. Accordingly in a few days afterwards he took the letters, dated December 19th, to Rupp's residence: Rupp not being at home at the moment, they were not delivered. Rupp was accidentally

[Bowman's Appeal.]

killed on the same day before the register saw him, and the letters were consequently not delivered to him. On the 28th of the same month, letters *d. b. n. c. t. a.* on Sponsler's estate were issued to John Bobb. Prior to the 4th of February 1867, administration of the estate of Rupp was granted to Solomon G. Bowman, who on that day filed the following inventory of Sponsler's personal estate, "so far as the same have come to the hand and possession of Solomon G. Bowman, administrator of Henry G. Rupp, who was executor of said Charles W. Sponsler, deceased, duly appointed by the register of said county, and who was also trustee of said decedent prior to his death:—

| | |
|---|---|
| Note of H. G. Rupp, | $500.00 |
| Int. from 1st April 1866. | |
| Balance on bank account with H. G. Rupp, | 91.59 |
| Balance on note of S. Hoffman, | 20.00 |
| Int. from 22d June 1865. | |
| Note of Henry M. Cocklin, dated 28th Mar. 1866, | 75.00 |
| Int. after 4 mo. | |
| Cash on hand, | .25 |
| Chest and clothing, | 15.00 |
| | $701.84" |

Bowman, on the 16th of September 1867, filed an account as follows:—

"First and final account of H. G. Rupp, deceased, executor of the last will and testament of Charles W. Sponsler, late of the borough of Mechanicsburg, deceased, as settled by S. G. Bowman, his administrator, &c.

| | |
|---|---|
| Accountant charges himself with the amount of the inventory as filed in the register's office, | $701.84 |
| Accountant charges interest on an individual note of $500—1 year 6 months and 23 days, | 46.50 |
| | $748.34 |

" CREDITS.                Y

| | |
|---|---|
| J. Dorsheimer, letters, | $6.47 |
| J. A. Zimmerman, livery bill, | 5·00 |
| P. Mosey, digging grave, | 3·00 |
| A. K. Rheem, advertising, | 4.00 |
| Jos. Ritner, drawing will and retainer in estate, | 8.00 |
| Gorgas & Coover, appraisers, | 1.00 |
| John Bobb, admin. *d. b. n. c. t. a.*, | 110.25 |
| J. A. Swartz, meat bill for funeral, | 3.98 |
| E. Landis, services at funeral, | 2.00 |
| Register, filing inventory, | .30 |
| Accountant allowance | 40.00 |
| Miller & Ritner, stating acc't and prof. services, | 30.00 |
| Register's fees passage and stamp, | 7.47" |

The following exceptions were filed by Sponsler, one of the legatees of C. W. Sponsler:—

" 1. The account is not a just and full account of the assets of the estate.   A large amount is omitted from the debit side of the account.

" 2. Henry G. Rupp never took upon himself the duties of the executorship, and was killed before so doing, therefore the entire credits as claimed are improper and should not be allowed.

" 3. The administrator of Henry G. Rupp, deceased, has no right in the said account, to either an allowance or charge for counsel fees as against the estate of C. W. Sponsler, deceased.

" 4. The account is in all respects irregular and improper, being merely the account of one who has made himself executor *de son tort*."

Under these exceptions the auditor was appointed.   He reported that some of the items in the inventory should have been larger in amount, so as to have increased it to $762.57.   He appears to have made no changes in the credits claimed in the account.

To the report of the auditor, Bobb, the administrator *c. t. a.*, &c., of Sponsler, excepted: that the auditor did not decide that the administrator of Rupp had no right to file the account referred to the auditor.

The court (Graham P. J.) decided that Bowman, the administrator, &c., of Rupp, had no right to make an inventory or administer the estate of Sponsler in place of Rupp.   The court, therefore, struck out all the debit side of the account, but, holding that Rupp derived his authority from the will, directed the estate of Rupp should be allowed the first five items of the account, they having been paid by him in his lifetime, and also the fees of the register and clerk of the Orphans' Court; and decreed accordingly.   From this decree Bowman appealed to the Supreme Court, and assigned it for error.

*J. Ritner, Jr.*, and *W. H. Miller*, for appellant.

*L. J. M. Foulke* and *W. M. Penrose*, for appellees, cited Act of February 24th 1834, § 31, Pamph. L. 78, Purd. 287, pl. 95; Stair *v.* York Bank, 5 P. F. Smith 364; Meiser *v.* Eckhart, 7 Harris 201; Little *v.* Walton, 11 Id. 164.

The opinion of the court was delivered, July 6th 1869, by

AGNEW, J.—Bowman, the administrator of Rupp, filed the account of Rupp as executor of Sponsler, charging Rupp with his own note and a book account owing to Sponsler, and with some other items of property which had come to Rupp's hands in his lifetime and while he was executor.   Exceptions being filed to the account by John Bobb, administrator *de bonis non cum testa-*

*mento annexo* of Sponsler, an auditor was appointed, who reported back the account as filed with some changes in the items. The Orphans' Court set aside the report of the auditor, and struck out the entire debit side of the account, on the ground that no assets had come to the hands of Rupp as executor. This was clearly an error.

Rupp had accepted and taken upon himself the duties of the office. Both in England and in this state, the appointment of the testator gives to the executor a right to administer, of which only his own renunciation can deprive him, or his refusal to appear when cited to prove the will and take out letters: Toller's Law of Exrs. 41, 45; Williams's Exrs. 160–169. The executor may make his election to accept, even before probate of the will, by doing such acts as amount to administration: Toller 63, 64. Whatever acts will make a man liable as an executor *de son tort* will be deemed an election of the executorship: Williams 163. See also Van Horn *v.* Fonda, 5 Johnson's Ch. R. 383. Renunciation must be evidenced by some act entered or recorded: Williams 165; Commonwealth *v.* Mateer, 16 S. & R. 416.

-The taking of the oath is a final and conclusive act. If (says Toller 43) he appear and take the usual oath before the surrogate, he has made his election, and afterwards cannot divest himself of the office, but may be compelled to perform it. In Miller *v.* Meetch, 8 Barr 420, these principles are stated and recognised by Judge Bell. In the present case Rupp appeared before the register of wills, made proof of the will, took the oath of office, and letters testamentary were awarded to him by the register. This is proved by the letters themselves, which bear date the same day when the will was proved and oath taken. The register not having time to fill up the papers, told Rupp he would send them by mail or bring them to him. He did bring them a few days afterward, but Rupp was absent from home, and was killed the same day, so that they did not come into his hands. But the judicial act of the register was complete, and nothing short of an appeal could change it: Loy *v.* Kennedy, 1 W. & S. 396; Shinn *v.* Holmes, 1 Casey 142. Thus it is perfectly clear that Rupp was the lawfully appointed and accepted executor of the will; was bound to proceed with the administration of the estate, and was liable to the jurisdiction of the Orphans' Court to compel him to settle his account. He could not be treated as a tortfeasor as to the property of the testator then in his hands. Neither trespass, replevin, trover nor assumpsit could lie against him; but, on the contrary, he was bound to hold it for the trust, and to account for it in the Orphans' Court.

What was Rupp accountable for as executor of Sponsler? This is equally clear. He owed Sponsler a note of $500, and a book account of $119.27, which the auditor increased to $152,

and was in possession of certain articles of personal property brought by Sponsler to his house when he came there, made his will and died there, and the will remained in the custody of Rupp when he proved it and took the oath. The liability of Rupp *as executor* for his own debts is beyond all dispute. They were paid in his own hands, and he was chargeable therewith. This was decided before the Act of 1834 was passed: Griffith *v.* Chew's Exrs., 8 S. & R. 17; Pusey *v.* Clemson, 9 S. & R. 208; Simon *v.* Simon, 12 S. & R. 429: Fishel *v.* Fishel, 7 Watts 44; Grayble *v.* York and Gettysburg T. P. R. Co., 10 S. & R. 269. But the Act of 24th February 1834, §§ 5 and 6, puts the case beyond all question. The 6th section especially says: "The appointment of any person to be executor shall in no case be deemed a release or extinguishment of any debt or demand which the testator may have against him; but such debt shall be included in the inventory and be subject to distribution like other personal estate." At common law, the appointment of a debtor operated as a release of the debt, but in this state the common law was recognised so far as that the action for it was merged, but the debt must be accounted for as assets. The Act of 1834 put this into statutory form. Rupp was also liable to account for the goods which came to his hands. If alive and settling his own account clearly he could be surcharged for them if he failed to bring them into his settlement, and so when dead his administrator settling his account as executor of Sponsler, so far as he had gone, would be bound to account for the goods.

Besides, the act of the court in striking out the entire debit side of the account is inconsistent with the statutory remedy provided for the recovery of the estate in the hands of a predecessor in the administration. Sect. 31, Act 24th February 1834, provides, "Administrators *de bonis non*, with or without the will annexed, shall have power to demand and recover from their *predecessors in the administration*, or their legal representatives, *all moneys, goods and assets remaining in their hands* due and belonging to the estate of the decedent, and to commence and prosecute actions upon promises made to such predecessors in their *representative* character," &c. Thus the administrator *de bonis non* pursues the former representative of the estate as a predecessor in office, not as a tortfeasor who has converted the estate, or an individual debtor who owes it. The following cases, decided on this section, illustrate this position: Commonwealth *v.* Strohecker, 9 Watts 479; Drenkle *v.* Sharman, Id. 485; Weld *v.* McClure, Id. 495; Carter *v.* Trueman, 7 Barr 315; Little *v.* Walton, 11 Harris 164. It is clear, therefore, that Rupp's administrator cannot be sued on the note or book account as ordinary debts, for they had already passed into the hands of Rupp as executor. Nor could he bring replevin or trover for the goods, as received by

[Bowman's Appeal.]

Rupp in his lifetime, of Sponsler. The proviso to the 31st section of the Act of 1834, just referred to, makes this more plain. It provides, " that when any suit shall be brought by an administrator *de bonis non* for the recovery of moneys, goods or assets remaining in the hands of his predecessors or their legal representatives before they shall have settled their final administration account, the court in which such action shall be brought shall have power to stay the proceedings therein, on the defendant's filing such account in the register's office of the proper county twenty days previous to the term next succeeding that to which the writ was returnable, until the said account shall have been finally settled and adjusted," &c. In the present case the account of the deceased executor was filed by his legal representative, and was the mode recognised by the law of ascertaining the estate which had come to his hands; yet the court struck out the whole debit side, the effect of which was to leave his estate exposed to actions at common law on the note, book account, and for the goods received. This is clearly contrary to the law which brings the settlement of such an account into the Orphans' Court, and which does away circuity of action by giving the administrator *de bonis non* a direct remedy against the estate of the deceased executor for the balance remaining in his hands of the predecessor, after settlement in the Orphans' Court.

It is said that Bowman, the administrator of Rupp, had no right to administer the estate of Sponsler. This is true; and so far, therefore, as he undertook to continue the administration of Sponsler's estate, he was clearly wrong, and the court was right in striking such items out of the account. They were few and small, however. The error of the court was in striking out the whole of one side of the account, and thus preventing that settlement which it is the very purpose of the law to procure. I would therefore reverse the decree, and order the account to be restored and settled, so as to charge Rupp's estate with all he received as executor of Sponsler, and credit it with his admitted payments.

> The decree of the court below is reversed, and the account of the appellant is ordered to be restored according to the principles set forth in this opinion. The costs are ordered to be paid out of the estate.

SHARSWOOD, J., dissented from so much of the opinion of the court as relates to the goods of Sponsler remaining specifically in the hands of his executor Rupp when he died; and filed a dissenting opinion.