## Ralston's Estate.  Johnston's Appeal.

*Executors and administrators—Acceptance or renunciation.*

The time when it becomes imperative for an executor named to accept or renounce is when he is cited to do so, and mere inaction or delay, unaccompanied by any acts of intermeddling with the estate, cannot amount to an acceptance against his consent.

The payment of the funeral expenses of decedent, their father, by sons, named as executors, will not charge them as executors where the payment was not made with funds of the estate, and they renounce when cited to qualify.

*Decedent's estate—Res judicata.*

Where a judgment is attacked in the common pleas by a judgment creditor it cannot be subsequently attacked on distribution in the orphans' court by the same party.

Argued Oct. 12, 1893.  Appeal, No. 123, Oct. T., 1893, by John Johnston, a creditor, from decree of O. C. Armstrong Co., Sept. T., 1888, No. 1, dismissing exceptions to adjudication of administrators' account in estate of John Ralston, deceased. Before STERRETT, C. J., GREEN, WILLIAMS, MITCHELL, DEAN and THOMPSON, JJ.

Adjudication of administrators' account. Before NOYES, P. J., 37th judicial district, specially presiding.

The auditor, R. A. McCullough, Esq., reported the facts in substance as follows : John Ralston had four sons, all of whom were of full age prior to his death, which occurred on Aug. 29, 1879.   Some seven or eight years prior to this he had taken his sons, William, David A. and Thomas into partnership, and the business was conducted under the firm name of John Ralston & Sons, at Elderton.   He also formed a partnership known as Ralston, McQuaide & Co., who did business in Fairview, Butler county, as a bank.   This firm was composed of John Ralston, D. A. Ralston and James G. McQuaide.   On Aug. 6, 1879, John Ralston retired from the firm of John Ralston & Sons, transferring his interest to his sons, they agreeing to pay the debts of the partnership.   A statement of the assets and liabilities of the firm of John Ralston & Sons made at the time showed that they were about equal.   At the same time D. A. Ralston retired from the firm, and William and Thomas formed a partnership known as Ralston Bros., and continued the business of John Ralston & Sons at Elderton.   At the time of his death decedent was the owner of several farms, but had little or no personal property, except his interest in the firm of Ralston, McQuaide & Co.   At the time of his death this firm was in a prosperous condition.   About 1872 he had made a will in which he appointed his three sons, Thomas, David and William, his executors.

On March 17, 1882, D. A. Ralston, the surviving member of the firm of Ralston, McQuaide & Co., made an assignment for the benefit of his creditors.   There were some certificates of deposit that had been issued in the lifetime of John Ralston upon which interest had been paid from time to time, but these certificates had not been taken up and new ones issued in their place.   Among these were those held by John Johnston, John Blaney and John C. Ray.   There were also creditors of John Ralston & Sons.   Clark K. Hotham, one of them, on May 15, 1882, had a citation issued by the register to compel the production of the will of John Ralston.   Sixteen days later the will was filed.   On Aug. 19, 1882, John C. Ray, a creditor of Ralston, McQuaide & Co., caused a citation to be issued on the subscribing witnesses to the will, who on Aug. 28th proved the will, and it was admitted to probate.

On May 29, 1883, almost four years after the death of John Ralston, the appellant, John Johnston, appeared before the register and caused a citation upon the executors named in the will to show cause why letters of administration should not be issued to themselves or another. On June 9, 1883, the executors named in the will renounced in favor of D. W. Hawk. Letters of administration were on that day issued to D. W. Hawk, who on June 23, 1883, filed a general appraisement list, and on June 29, 1887, filed his account in the orphans' court, showing less than enough to pay expense of administration. To this account appellant filed numerous exceptions.

On July 20, 1883, appellant, John Johnston, brought suit on his certificate of deposit against D. W. Hawk, administrator, and recovered a judgment. Suit was also brought by John C. Ray, and by the executor of John Gilpin for use of William Ralston on the Blaney certificates of deposit. The John Johnston case was made a test case and was carried to the Supreme Court to No. 80, Oct. term, 1886, where the judgment was affirmed. See report in 5 Cent. R. 468; 6 Atl. R. 725, and 34 Pitts. L. J. 213. Judgment was entered on the other claims by confession.

The real estate of John Ralston was sold at orphans' court sale, and a sum realized insufficient to pay the debts. D. W. Hawk filed his account of the funds realized from the sale.

The auditor was appointed to dispose of the exceptions to the first account of D. W. Hawk and to make distribution of the fund arising from the sale of the real estate in the hands of the administrator.

In the meantime appellant had, in the court of common pleas, attacked the validity of the judgment of Blaney for use of William Ralston, alleging fraud and collusion. The court granted a rule to show cause why the judgment should not be opened or stricken off. The matter then rested for about four years when the court, NOYES, P. J., specially presiding, in an opinion filed, discharged the rule. The exceptions to the account of D. W. Hawk, were also abandoned, which left nothing for the auditor to do but prepare a schedule of distribution of the proceeds of the real estate.

Before the auditor appellant again attacked the judgment of Blaney to use of Wm. Ralston, alleging that as Gilpin bought

the Blaney claim for William Ralston for about twenty per
cent of its full value, and, as Ralston was named as one of the
executors, the purchase was in trust for the estate.

Appellant also claimed that William Ralston should be
charged as executor.   The auditor found that the sons paid the
funeral expenses of their father, the decedent, but not as exec-
utors, and that they exercised no particular control over the
property, except to care for it until an administrator was rais-
ed.   The auditor found that these acts were not sufficient to
charge William Ralston as executor, and allowed his claim.
Exceptions by appellant to this allowance were dismissed.

*Errors assigned* were dismissal of exceptions, and decree,
quoting them.

*S. B. Schoyer*, *W. D. Patton* with him, for appellant, cited:
Lewin, Trusts, *201–4 ; Wise v. Wise, 2 J. & La T. 416 ;
Read v. Robinson, 6 W. & S. 29 ; Montgomery v. Johnson, 11
Ir. Eq. 476 ; Conyngham v. Conyngham, 1 Ves. Sr. 522 ; 3
Rhone, O. C. Pr. p. 3, §§ 5, 6 ; Schouler, Ex., §§ 53, 54 ; Perry,
Trusts, §§ 431, 464 ; Long v. Clopton, 1 Vern. 464 ;  Darcy v.
Hall, 1 Vern. 49 ; Davis v. Barrett, 14 Beav. 542 ; Jones's Ap.,
8 W. & S. 143 ; Pim v. Downing, 11 S. & R. 66 ; Wilson's
Ap., 115 Pa. 95 ; Fesmire's Est., 134 Pa. 67; Weldy's Est., 102
Pa. 454 ; Bisph. Eq. § 341 and cases cited ; Everman's Ap., 67
Pa. 335 ; Kittera's Est., 17 Pa. 417 ;  Bull's Ap., 24 Pa. 286.

*M. F. Leason*, for appellee, not heard, cited : Meckley's Ap.,
102 Pa. 542 ; Everman's Ap., 67 Pa. 335 ; Kittera's Est., 17 Pa.
417 ; Bull's Ap., 24 Pa. 286 ; Logue's Ap., 104 Pa. 136.

OPINION BY MR. JUSTICE MITCHELL, December 30, 1893 :

The judgment in favor of Blaney to use, etc., was not con-
fessed by Hawk, Adm. defendant, until after appellant's judg-
ment, a test case upon a claim exactly similar, had been affirmed
by this court.   Presumably therefore there was no defence, and
the learned judge of the common pleas so held in discharging
the rule to open it.   He also held that there was nothing in
the evidence to justify a finding of fraud or collusion.   This
point therefore was res adjudicata between the present parties,
and the only matter left open in the orphans' court was the al-
leged trust relation of William Ralston to the estate.

A trusteeship, whether as executor or otherwise, cannot be imposed upon any party, except by his consent, or as a consequence of his own acts. It is true the law presumes that this office, like any other gift, is beneficial, and that it will therefore be accepted, but the decision rests with the donee, and if he refuses, the presumption goes for nothing. The cases like Shoenberger's Exrs. v. Lancaster Savings Inst., 28 Pa. 459, where notice to one named as executor, but who subsequently renounced, was held sufficient to bind the estate, rest on the ground that as the party named can alone determine his acceptance or refusal, other parties upon whom is a necessity of present action, may proceed on the presumption that he will accept, and their action is valid until he actually renounces, or they have notice that he will not accept. The appointment as executors, says LOWRIE, J., "avails to make them representatives of the estate so far as relates to acts in which they are merely passive, such as receiving notice of the dishonor of a note. . . . He who is bound to give such notice, is not in fault in giving it to one who is thus potentially an executor." But neither this nor any other case that we have met with, supports the inference that a man can be charged with any duty as executor without his own consent, or such acts as the law regards as sufficient evidence of acceptance of the trust. Delay and inaction so far from raising a presumption of acceptance, are generally treated as evidence of refusal, 7 Am. & Eng. Encyc. of Law, 200, and though there are in this state many expressions that the refusal must be in writing and of record, Com. to use v. Mateer, 16 S. & R. 418; Heron v. Hoffner, 3 R. 398; Miller v. Meetch, 8 Pa. 420; Bowman's Appeal, 62 Pa. 169; yet that point was not probably meant to be decided as broadly as the expressions, apart from the circumstances of the particular cases, would seem to imply. Even if such be the fixed rule however, the time when it becomes imperative for the executor named to accept or renounce, is when he is cited to do so, and mere inaction and delay, unaccompanied by any acts of intermeddling with the estate, cannot amount to an acceptance against his consent.

The single act that is proved in this case, besides the delay, is the payment by the sons, including William, of the father's funeral expenses. But as reported by the auditor the evidence

was that this was not done with the funds of the estate, or by the sons as executors, but as a matter of filial affection and duty.   We agree with the auditor and the learned court below that such payment, " and mere quiescence for a long period of time, when there was apparently no estate to settle, do not amount to an acceptance."

The stress of appellant's argument is that by such quiescence William allowed his brother to go on and finally wreck the business of the bank at Fairview, whereas if he had compelled the winding up of that business while it was still solvent, the appellant's debt would have been paid in full.   But William not having accepted the executorship had no duties towards the appellant or any other creditor.   His sole relation to the estate was that of a legatee, and as such, while he had the right to cite his brother, the surviving partner in the banking business, to account, yet he was not bound to do so.   He could do so or not as he chose, and the incidental effect of his action or non-action on the assets available to other creditors when settlement was finally demanded, made no change in his rights.   The fact seems very clearly to be that all parties concerned, William, the appellant, and the other depositors, regarded the business of Ralston, McQuaide & Co. as perfectly solvent, and safe in the hands of the surviving partner, and the good faith of William is evidenced by the fact that the same confidence which lost the appellant his debt, lost William his share of his father's estate.

The loss becoming imminent William by the advice if not at the suggestion of his counsel, Gilpin, sought to recoup himself to some extent by the purchase of the Blaney claim at a discount.   That he could not do this, if he was a trustee, follows from the case of Heager's Estate, 15 S. & R. 65, and is clear upon general principles, but as the proof of the trust relation entirely fails, there is no good reason, as the learned auditor well reports, why William should not have the same rights as others, to buy up claims and make a profit out of them if he could.

Judgment affirmed.